**KOKERNOT et ux. v. CALDWELL et al.**

No. 14232.

Court of Civil Appeals of Texas.
Dallas.

June 2, 1950.

Rehearing Denied June 30, 1950.

D. S. Meredith, Jr., Longview, Mike Anglin, Ballinger, Alfred Creigh, Jr., Alpine, Stubbeman, McRae & Sealy, and F. H. Pannill, of Midland, for appellants.

J. N. Saye, Longview, A. W. Walker, Jr., and Robertson, Jackson, Payne, Lancaster & Walker, of Dallas, for appellees.

CRAMER, Justice.

Appellants as plaintiffs instituted this suit in the trial court by petition containing three counts: the first in trespass to try title involving 3/32nds of 1/8th royalty under a 54.2 acre tract of land in the John Walling League, Van Zandt County, Texas; the second count involved the same mineral interest and covered the same land and was a suit to remove cloud from title; and the third count was likewise a suit to remove cloud from title, pleading more particularly the original description of the land which was later discovered to have an excess of 4.2 acres. Defendants, appellees here, answered by general denial and plea of not guilty. For the purpose of this opinion it may be stated that both appellants and appellees claim mineral interests under royalty deeds emanating from Mrs. Ella York et al. Prior to the acquisition of title to the mineral interests, by both appellants and appellees, one F. L. Luckel acquired an oil, gas and mineral lease from Mrs. Ella York et al. Title to the oil and gas lease was thereafter vested in the Pure Oil Company. Said lease was for a period

of five years "and as long thereafter as oil or gas, or either of them is produced from said land by the lessee." The right to assign was expressly given. In each of the leases referred to, the provisions pertinent to the only question in this case are as follows:

"In consideration of the premises the said lessee covenants and agrees: 1st. To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the lease premises. 2nd. To pay lessor, as royalty for gas from each well where gas only is found, while the same is being sold or used off of the premises, one-eighth of the market price at the wells of the amount so sold or used, * * *. 3rd. To pay to lessor as royalty for gas produced from any oil well and used by lessee for the manufacture of gasoline, one-eighth of the market value of such gas. If such gas is sold by lessee, then the net proceeds derived from the sale of said casing-head gas at the wells."

Subsequent to the execution of said leases and assignments to the Pure Oil Company, Mrs. Ella York conveyed by mineral deeds to J. P. Johnston a royalty interest shown by a correction deed; such corrected mineral deed, omitting heading, property description, signatures and acknowledgments, was as follows:

"* * * That we, Mrs. Ella York, a widow, Henry York, G. N. York, C. F. York, and Mrs. Aria Davis, joined by her husband L. L. Davis, of Smith County, Texas, for and in consideration of the sum of Ten and No/100 Dollars ($10.00), cash in hand paid by J. P. Johnston, hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered and by these presents to grant, sell, convey, assign, and deliver unto the said Grantee, for a period of 20 years an undivided one-half interest in and to all of the oil, gas and other minerals, in and under, and that may be produced from the following described land situated in Van Zandt County, Texas, to-wit:

(Description of land by metes and bounds omitted).

"This deed is made and delivered for the purpose of amending for all purposes that certain mineral deed from Mrs. Ella York, et al, to J. P. Johnston, same being recorded Vol. 185, page 65, Deed Records of Van Zandt County, Texas, said deed being dated July 17th, 1929.

"Together with the right of ingress and egress at all times for the purpose of mining and drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"*Said land being now under an oil and gas lease, executed in favor of Pure Oil Company, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-half of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.* (Italics ours.)

"It is understood and agreed that the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided one-half of the lease interest and in all future rentals on said land for oil, gas and other mineral privileges shall be owned by said Grantee, he owning ½ of all oil, gas and other minerals in and under said lands, together with one-half interest in all future rents.

"To have and to hold the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee herein, * * * heirs, and assigns forever; and we do hereby bind our heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said grantee herein, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness our hands this the 24th day of August, 1929."

(Signatures and acknowledgments omitted.)

J. P. Johnston, grantee in the above mineral deed, subsequently conveyed a portion of the mineral interest so acquired by him to F. A. Hankinson. This instrument contained, immediately after the description clause, the following separate paragraph:

"This grant shall terminate at the end of 20 years from July 17, 1929."

In the same instrument there is copied the paragraph (except the fractional interests conveyed) contained in the above mentioned mineral deed. F. A. Hankinson subsequently conveyed a portion of said mineral interest to the appellant, W. H. Kokernot. This instrument contained similar paragraphs except that, apparently by mistake, the grant was stated to terminate and the end of 20 years from July 17, 1930, rather than July 17, 1929.

By what is denominated a consolidation agreement, numerous persons agreed that various properties could be operated as one, and by virtue of the fact that 4.2 acres excess was discovered, W. H. Kokernot's interest was reduced to 1/92.49 interest. While the appellant, W. H. Kokernot, did not sign this consolidation agreement, it is undisputed that subsequent to its date, May 2, 1931, Kokernot received the exact interest set forth in said consolidation agreement. Beginning in 1934, and for a period of years extending through 1948, the appellees, D. K. Caldwell et al., some three years after the mineral deed to W. H. Kokernot was filed for record, made various and sundry purchases from Mrs. W. A. York et al. of a portion of their interest. Appellants do not question the making of such purchases by appellees, but only the effect thereof in view of the provisions of the mineral deeds under which appellants claim.

The appellees herein have by numerous deeds executed between the years 1930–1940 by members of the York family, grantors in the mineral deed to J. P. Johnston, acquired mineral interests to be effective upon the expiration of said 20-year period from July 17, 1929. Said 20-year period has now elapsed and this case involves the question of ownership of the royalties payable under the existing lease subsequent to the expiration of said 20-year period.

The only oral testimony was that of W. H. Kokernot and was, in substance, that he saw and signed the consolidation agreement and has received royalty as set out therein since 1931, " * * * until this matter got started * * *." All other evidence consisted of written instruments.

There is no contention by any party that the instruments involved need extrinsic evidence to assist in their construction; and there was no assignment complaining of the exclusion of evidence oral or written.

There is no dispute between the parties with reference to oil having been discovered within the 5-year primary period under the Luckel-Pure Oil lease, or that oil has been continuously produced thereunder and, at date of the trial in the court below, was still being produced under the terms of said lease by the present owner thereof (Pure Oil Company).

The trial court found for appellees, and entered a take nothing judgment against appellants, from which this appeal has been properly perfected.

Appellants by their first, second and third points in this Court, which are contained in their original brief, assert that (1) the mineral rights created and conveyed to them by the amended mineral deed consisted of two separate and distinct estates, first, a one-half mineral estate in the land described in the first quoted paragraph in the mineral deed above for a definite term of 20 years beginning July 17, 1929; and, second, an interest in one-half of the royalty under the Pure Oil lease which exists so long as oil, gas and minerals are produced under said lease according to its terms; (2) that under the mineral deed as amended grantees are entitled to receive their interest in royalties under the Pure Oil lease so long as oil, gas and other minerals are produced thereunder; and (3) a construction favorable to appellants should be placed on the mineral deed as amended if it is ambiguous. After appellee's brief was filed, appellants filed a supplemental brief (which appellees thereafter answered) which contained points 4 to 11, in substance as follows: (4) The reference to the lease in the royalty deed incorporates in that deed all provisions

of the lease, including the term for which the royalty is to continue, and (5) controls any other provision in that deed in conflict therewith; (6) all portions and provisions of the written instrument must be given effect whenever possible; (7) to eliminate from the deed the royalty term in the lease, or (8) to impose the 20-year term of limitation thereon would amount to writing a new contract for the parties; (9) the parties have construed the 20-year term as not applying to the royalty under the lease in executing the amended royalty deed, (10) since such amended deed superseded all prior agreements; and (11) that by executing and acquiescing in the consolidation agreement of May 2, 1931, the parties have construed the 20-year term as not applying to the royalty under the existing lease and are bound by that construction.

All assignments will be considered together, since, from the facts stated, the case resolves itself into but one inquiry, to wit, whether or not the provision with reference to termination at the end of 20 years contained in the first above quoted paragraph in the amended deed was effective to cause a termination of the right to receive royalty under the lease in July 1949; or whether or not the provision in the lease with reference to lessee agreeing to pay ⅛th of all oil produced and saved from the lease premises, considered with the other instruments, operated to extend appellants' right to receive the royalty beyond the 20 years.

The provision in the deed here, to wit, "Said land being now under an oil and gas lease, executed in favor of Pure Oil Company, it is understood and agreed that this sale is made *subject to the terms of said lease, but covers and includes one-half of all the oil royalty,* and gas rental or royalty *due and to be paid under the terms of said lease,*" is (with slight changes to cover this lease) the standard provision in the printed form of mineral deeds used in this State.

The term "subject to" as used in the mineral deed has a well recognized meaning. "The words 'subject to,' used in their ordinary sense, mean 'subordinate to,' 'subservient to' or 'limited by.' There is nothing in the use of the words 'subject to,' in their ordinary use, which would even hint at the creation of affirmative rights." Englestein v. Mintz, 345 Ill. 48, 177 N.E. 746, 752. Shell Oil Co. v. Manley Oil Corporation, 7 Cir., 124 F.2d 714.

"Subject to," as used in conveyances, is a term of qualification and not of contract. Cox v. Butts, 48 Okl. 147, 149 P. 1090; Consolidated Coal Co. v. Peers, 166 Ill. 361, 46 N.E. 1105, 38 L.R.A. 624.

The last part of the paragraph, "* * *, but covers and includes one-half of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease," is not a part of the granting clause and there is nothing in the granting clause itself which it could supplement. It was necessary to place this paragraph in the deed in order that appellees would be protected under the general warranty clause; and appellants were entitled (in connection with, and as a part of, the "subject to" clause) to assure themselves that they would receive their share of the royalty under the lease to which their mineral interest, recited in the granting clause, entitled them. In Germany v. Turner, 132 Tex. 491, 123 S.W.2d 874, 877, at page 877, our Supreme Court, stated: "While it is of course the duty of the Court to consider all parts of a deed, and if possible determine the intention of the grantors from a consideration of all its parts, giving effect to all parts if that can be done, yet it is not infrequent that a situation arises where it becomes necessary to resolve a conflict between certain portions of the deed. It is well settled that if there be an irreconcilable conflict between the granting, habendum and warranty clauses on the one side, and the premises or recitals on the other, the premises or recitals must yield to the other portions. Moore v. City of Waco, 85 Tex. 206, 20 S.W. 61; Burgess v. McCommas, 61 Tex.Civ.App. 246, 129 S.W. 382, writ refused; Kynerd v. Hulen, 5 Cir., 5 F.2d 160."

In Kynerd v. Hulen, 5 Cir., 5 F.2d 160, 161, it was held: "But since the purpose of the granting clause of a deed is to define and designate the estate conveyed, in case of conflict it prevails over other clauses."

Repugnance invokes the rule of construction announced in Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360, 363, as follows: "Whenever the first part of a deed is definite and certain and irreconcilable with later parts, the first part must prevail. Wallace v. Crow (Tex.Sup.) 1 S.W. 372; Witt v. Harlan, 66 Tex. 660, 2 S.W. 41."

Another rule of construction pertinent to the facts of this case is stated in Coffee v. Manly, Tex.Civ.App., 166 S.W.2d 377, 380: "However, the question, in our opinion, has been answered by our Supreme Court as follows: 'It is not permissible to give controlling effect to that which creates an ambiguity, and destroys the certainty which is expressed by other language, and thus overthrow the clear and explicit intention of the parties.' Cartwright v. Trueblood, 90 Tex. 535, 39 S.W. 930, 932."

But appellants cite the case of Acklin v. Fuqua, Tex.Civ.App., 193 S.W.2d 297, 299, as being contrary to these holdings. Such case merely holds that two separate mineral estates may be created in the same instrument. To this we agree, *if* the proper language is used and the granting clause by reasonable construction can be said to create each of the estates, or, where the granting clause has language which taken with supplementary language in other portions of the deed, so provides.

The next case cited is Ashcroft v. Fleming, Tex.Civ.App., 168 S.W.2d 304; Fleming v. Ashcroft, 141 Tex. 41, 175 S.W.2d 401, 404 (Supreme Court opinion in the case). The granting clause in the mineral deed in the Ashcroft case was: " * * * has and by these presents does grant, bargain, sell, convey, set over and assign and deliver unto R. M. Loving, the following, to-wit: One-half interest in and to all of the oil, gas, in and under, and that may be produced from the following described lands, to-wit: (Here follows description of several tracts including the land in controversy). It is Understood that the sale of this royalty is for a period of fifteen years from February 19th, 1924, under the terms and provisions of oil and gas lease heretofore given by grantor herein as to the production of oil and gas, and at the expiration of said fifteen years the title to the minerals conveyed herein is to revert, without further notice, to grantor herein."

Such lease there involved, which had a primary term of five years, and no oil having been produced thereunder, terminated on the expiration of such five years. But the mineral interest ran for fifteen years. The contention was that since there was production under the second lease, the mineral owners were entitled to royalties under the second lease after the fifteen-year period. The Commission of Appeals (opp. app. by Sup.Ct.) affirmed the Court of Civil Appeals and the trial court judgment, which denied a recovery of royalties after the fifteen-year period.

However, the Supreme Court, in its opinion, used the following language, quoted by appellant, to wit: "The only possibility whereby the period could be extended beyond the fifteen years was for oil or gas, which might be produced under the Russ lease, to be produced thereunder, that is, be produced from the land by the lessee. The Russ lease did not produce, hence there was no extension of the fifteen-year term." The case was not disposed of under such language. Such statement was dictum.

Each mineral deed must be construed from the language used in that particular deed, and the language in that deed supports the conclusion reached by the Court. There is no similar language contained in the deed under construction here; therefore the statement above quoted from the Ashcroft case is not applicable here.

Appellants also contend that not to consider the royalty term in the lease as a part of the mineral deed and limiting the term of the grant to 20 years as recited in the granting clause of the deed here, would be writing a new contract for the parties. To this we cannot agree. The granting clause clearly limits the term or duration of the grant of royalty here to 20 years. The "subject to" clause with the "but covers and includes" provision as a part thereof, merely refers to and limits the granting clause so as to protect both parties under the habendum and warranty clause in the last paragraph of the deed here.

The "covers and includes" provision in the "subject to" clause did not fix a different duration or add to the granting clause. The case of Hoffman v. Magnolia Pet. Co., Tex.Com.App., 273 S.W. 828, cited by appellants, did not involve a limitation of time on the grant, but covered and included by express language one-half of the royalty under the lease on the land there involved. The land conveyed was a 90-acre tract and the lease covered a 320-acre tract, of which the 90 acres was a part. Such holding there was on a different question and is in no way in conflict with our holding here. Neither is the case of Wann v. Metropolitan Life Ins. Co., Tex.Com.App., 41 S.W.2d 50, in point, since we have held that the instrument here did not create two estates.

We have also considered the following cases cited by appellant: Kleck v. Kleck, Tex.Civ.App., 246 S.W. 720; Magnolia Petroleum Co. v. Page, Tex.Civ.App., 141 S.W.2d 691; Hutchins v. Humble Oil & Ref. Co., Tex.Civ.App., 161 S.W.2d 571; Richardson v. Hart, 143 Tex. 392, 185 S.W. 2d 563; Schubert v. Miller, Tex.Civ.App., 119 S.W.2d 139; Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355, and have concluded that such cases are clearly distinguishable from this case and that our above conclusions of law applicable to the facts of this case are correct.

All assignments are overruled and the judgment below is affirmed.