NETTIE L. McBRIDE ET AL v. C. C. HUTSON

No. A-6422. Decided November 20, 1957.
(306 S.W. 2d Series 888.)

*Burford, Ryburn, Hincks & Ford* and *Joseph M. Stuhl, Shults & Thurman* and *James U. Thurman,* all of Dallas, for petitioners.

634

*J. C. Jacobs*, of Corsicana, for respondent.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This is a trespass to try title action involving a fractional interest in the minerals of the land concerned. W. A. Coleman and wife are the common source, the respondent-plaintiff, Hutson, claiming by virtue of a 1934 general warranty deed of the land from the Colemans to himself, and the petitioners-defendant under a 1928 document executed by the Colemans in favor of the law firm of Cockrell, McBride, O'Donnell and Hamilton. The latter instrument is both a power of attorney and conveyance of a mineral estate for legal services to be rendered, and which were admittedly duly rendered, in effecting the judicial cancellation of an oil and gas lease of the premises then outstanding of record in Sims Oil Company and providing for a one-eighth royalty to the Colemans as lessors. For further reference the power of attorney is copied in the footnote[1], with dele-

---

[1] "That we, W. A. Coleman and wife, Ollie Coleman, of said County and State, have employed, selected and constituted and do by these presents employ, select and constitute L. C. McBride, C. F. O'Donnell and Dexter Hamilton, who compose the firm of Cockrell, McBride, O'Donnell and Hamilton, a partnership firm of Dallas, Dallas County, Texas, as our lawful attorneys to institute and prosecute to final judgment or to other final disposition a suit in the District Court of Navarro County, Texas, or any other suits for the recovery of all the title, right and interest in and to the oil, gas and other mineral underlying and constituting a part of the real estate hereinafter described, and especially for the cancellation of all leasehold interest or other interest asserted or to be asserted in the oil, gas and other minerals underlying said land by the Sims Oil Company, a Corporation.

"It is agreed and understood that said Attorneys above named who compose the firm of Cockrell, McBride, O'Donnell and Hamilton *shall promptly file and diligently prosecute to final disposition whatever suit or suits that might be necessary to cancel and remove from said land any asserted leasehold lease or other claim of estate in and to the oil and other minerals in and under said land asserted or to be asserted on account of the Sims Oil Company, existing by virtue of a certain oil lease dated February 1st, 1919,* and recorded in Vol. 214, page 67, Navarro County Deed Records and all claims of title or interest in and to oil and other minerals made or to be made by or on behalf of any other party by virtue of said above referred to lease or otherwise.

"We hereby nominate, select and constitute each and all of our said above named Attorneys as our Attorneys-In-Fact to take charge of and prosecute by suit

tion of immaterial portions and with italics supplied by us to indicate the more relevant parts.

It will be noted that the granting clause purports to convey to the attorneys

" * * * a one-third (1/3) undivided interest in and to all the right, title and interest in and to said mineral estate which may be recovered or acquired by them under this employment * * *" (followed by a proper description of the land included in the lease held by Sims Oil Company).

Importantly also to be noted is the very last provision of the instrument reading "And such lease to be a regular commercial lease for 5 yrs. reversion to be to W. A. Coleman and wife." The position of the respondent-plaintiff was and is that the instrument conveyed an estate of one-third of seven-eighths of the minerals in place, but only as a conditional or determinable fee, which has long since expired. The trial court, sitting without a jury, upheld this position in full and accordingly rendered judgment for the respondent-plaintiff, denying the petitioners-defendant any present interest in the minerals. In so doing it stated the quantum of the estate conveyed to be one-third of seven-eighths, despit the somewhat unusual wording of the granting clause in this connection, but also held that the conveyance was "with the condition that if all the parties, that is, Coleman and wife and said three attorneys, should sell their interest or make an oil and gas lease upon a regular commercial lease for five years, thereafter the interest of said assignees under the power

---

or otherwise all claims which we now assert or may hereafter assert against the Sims Oil Company or any other person claiming said oil, gas and other mineral rights in and to said land through or under said above referred to recorded oil and gas lease. We hereby especially authorize our said attorneys, either jointly or singly to take any and all steps necessary for the complete recovery of title to said oil and minerals in said land against the Sims Oil Company or any other party. And hereby authorize our said attorneys-in-fact to execute and file any and all instruments of writing which may be necessary in cancelling the above mentioned lease and or removing any other asserted right, title or interest in and to the oil, gas and other mineals asserted thereto against us by or on behalf of any person. We especially authorize and empower any one of our said above designated attorneys-in-fact to sign our names to any release or other instrument which they deem necessary and proper to sign and execute on our behalf in making any disposition by settlement or otherwise of our claim to the oil and other mineral title existing in said land. Hereby ratifying and confirming any and all acts done or to be done by our said attorneys or any one of them in the premises.

"*For and in consideration of the services performed or to be performed by our said above named attorneys we hereby convey, assign, set over to the said L. C. McBride, C.F. O'Donnell and Dexter Hamilton who compose the firm of Cockrell, McBride, O'Donnell and Hamilton, jointly a one-third (1/3rd) undivided interest in and to all the right, title and interest in and to said mineral estate which may be recovered or acquired by them under this employment and power of at-*

of attorney would terminate and all rights granted therein would revert to W. A. Coleman and wife." The Court of Civil Appeals affirmed. 302 S.W. 2d 456.

The contention of the petitioners-defendant was and is that the conveyance was absolute, and the quantum of the estate was one-third of eight-eighths, not one-third of seven-eighths. They do not appear to contend, however, that, assuming the determinable character of the estate, the latter has yet not terminated.

Our own view is that the petitioners-defendant are right as to the character of the estate, but wrong in fixing the quantum at one-third of eight-eighths rather than seven-eighths. We will discuss the latter conclusion first.

 The contest in this particular is altogether as to the meaning of the granting clause above quoted, although admittedly the general purposes reflected by the instrument itself and the contents of other instruments, such as the Sims Oil Company lease, which are therein mentioned, are properly to be considered. We thus know that at the time the power of attorney was executed, the parties thereto knew, and contracted in the light of the fact, that the Colemans already owned a one-eighth royalty interest, which was thus not to be an object of the contemplated "recovery" against Sims Oil Company, which held only the seven-eighths working interest specified in its lease. To be sure, that royalty interest was not, in correct oil and gas legal parlance, a "mineral interest." See Woods v. Sims, infra, and cases therein cited. However, it was clearly an interest in

---

torney as compensation for all their services rendered or to be rendered by them. Said property being of the following description, to-wit:
(Metes and bounds description)
"It is agreed and understood by and between the parties hereto that in the event said Cockrell, McBride, O'Donnell and Hamilton should recover the title to said mineral estate in said above described land for us by effecting a cancellation of the asserted lease to the minerals therein claimed by the Sims Oil Company then at any time thereafter should we or they desire to make sales of our respective interests in and to said mineral rights and interest the party desiring to sell shall either (1) Agree to make conveyance of his or their undivided portion and interest for the same price and on the same terms the other proposes to sell or (2) A partition by agreement shall be made horizontally so that the respective portions of the land embracing the respective ownerships of the oil, gas and mineral rights shall thereby be segregated, set apart and described by metes and bounds or (3) Upon either party's proposition to sell his or their respective interest to said oil, gas and minerals the other shall have the option to purchase the same at the price and upon the terms of such proposed sale. And such lease to be a regular commercial lease for 5 yrs. reversion to be to W. A. Coleman and wife.
"Witness our signatures, this the 16 day of May, A.D. 1928.
/s/ W. A. Coleman
/s/ Ollie Coleman."

the minerals, and in the amount of one-eighth thereof, as well as an interest subject to alienation by its owner and taxable *ad valorem* as against him as real estate. Indeed, such an interest is ordinarily more valuable than a "mineral interest" of the same fraction, because an owner of the former is entitled to his one-eighth free of the heavy expense which an owner of the latter would have to undergo in order to enjoy the fruits of production. See Sheffield v. Hogg, 124 Texas 290, 77 S.W. 2d 1021, 80 S.W. 2d 741, and other cases collected in 31A Texas Jur., "Oil & Gas," Sec. 118, Notes 3, 9 and 10, and Sec. 567, Notes 7 through 11. Ordinarily, where the lessor conveys to a third party a given fractional "mineral interest" in land subject to a lease, the conveyance passes title to a corresponding fraction of the royalty. Woods v. Sims, 154 Texas 59, 64-65, 273 S.W. 2d 617, 621. The inference from this rule is that the lessor or royalty owner actually owns one-eighth of the same minerals of which the lessee owns seven-eighths, although their respective estates are of different kinds due to the fact that the royalty eighth is free of expense, while the other seven-eighths are burdened with the obligations and conditions of the lease.

■ The somewhat broad language found in Stephens County v. Mid-Kansas Oil and Gas Company, 113 Texas 160, 168, 254 S.W. 290, 292, 29 A.L.R. 566, to the effect that a mineral lessee gets title to "the" minerals in place, notwithstanding the reservation of royalties, has not been, and is not, considered to be at variance with the above views. The lessee does, indeed, have an interest in all (eight-eighths) of the minerals in place to the extent that he, and he alone, has the right to produce the minerals from the land in question. But that right does not make the lessee an owner of all the minerals in such a broad sense as that a cancellation of the lease would ordinarily mean a "recovery" by the lessor of all the minerals.

In the light of the above principles, and the Sims Oil Company lease providing for a seven-eighths working interest, the most reasonable construction of the clause is that one-third of a seven-eighths mineral interest was intended. Such a construction should prevail even though it were equally reasonable to say that the language meant one-third of eight-eighths. Despite the general rule of construction favoring grantees, the grantors should be favored in this instance, where the instrument was obviously drawn by the grantees, who not only were lawyers but were actually representing the grantors in respect of the general subject matter.

■ Passing now to the question of the absolute or determinable character of the interest conveyed, these additional facts should be noted for such relevance as they may have. The Colemans, on the same date on which they executed the power of attorney, executed still another contract or conveyance of an interest in the minerals involved in the Sims Oil Company suit, to wit, one in favor of Claude C. Albritton, in return for his engagement to help finance the litigation. The terms of this instrument, somewhat similar to those of the power of attorney, are copied in the footnote, with exception of formal parts and with italics supplied by us.[2] In the instant suit Albritton was also made a defendant on account of the interest claimed by him under the instrument last mentioned. Both courts below, while evidently considering the instrument to convey only a determinable interest, nevertheless denied the rspondent-plaintiff any recovery against Albritton in view of a 1934 quitclaim executed by him to the Colemans, and purporting to "except" in his own favor an unconditional one-third of seven-eighths mineral interest. The respondent-plaintiff did not seek writ of error from this portion of the judgment below, and so the Albritton transaction is not now before us except to the extent that the Coleman-Albritton conveyance of 1928 may properly bear on the construction of the power of attorney. The Court of Civil Appeals apparently gave some consideration to the last provision of the former instrument in reaching its conclusion that the "And such lease" provision of the power of attorney caused the latter to

---

[2]"That we, W. A. Coleman and wife, Ollie Coleman, of said state and County, for and in consideration of the sum of Ten ($10.00) Dollars to us paid by Claud Albritton and in consideration of the promise and agreement of the said Claud Albritton to pay all the expenses without any liability against us for any part part thereof necessary and incident to the litigation and oher acts and steps taken and to be taken in our behalf by the firm of Cockrell, McBride, O'Donnell & Hamilton, for the cancellation of a certain oil lease and the removal of all claims existing thereunder on behalf of the Sims Oil Company or any other person (which oil lease is fully described in petition filed in the District Court of Navarro County, Texas, in the suit of W. A. Coleman et ux Vs. Sims Oil Company, to which reference is made) *have granted, sold and conveyed and by these presents do hereby grant, sell and convey unto the said Claud Albritton of Navarro County, Texas, an undivided one-third of seven-eighths (1/3 of 7/8ths) interest in and to said premises.*

"*It is agreed and understood by the parties that should either party desiring to make sale of his interest in the oil and mineral rights in and to said land the other party shall join in such proposed conveyance at the price and upon the terms so proposed or shall by agreement petition* (sic) *said interest by horizontal partition of said property or shall purchase from other party his interest in said mineral rights at the proposed price and upon the proposed terms.*

"*It is understood and agreed that the above mentioned interest after cancellation of said lease and recovery of the estate conveyed in said lease shall remain in the said Claud Albritton until a regular commercial lease thereof is executed to run for a period not to exceed five years and any reversion under such lease to pass absolutely to the said W. A. Coleman and wife.*"

convey only a determinable interest, although the respondent-plaintiff does not place important reliance on it.

While, as before explained, the petitioners-defendant do not argue that, even if the interest be determinable, it has yet not terminated, the facts as to the matter of determination should probably also be referred to here for greater clarity. The record shows that in January of 1934, the Colemans (joined by certain other parties) made a five-year oil and gas lease to R. L. Wheelock, lessee, purportedly covering the full mineral interest in the land described in the power of attorney. It further appears that some four months later the grantees named in the power of attorney and C. C. Albritton aforenamed made a five-year oil and gas lease to R. L. Wheelock, lessee, purportedly covering "An undivided half interest in our two-thirds (2/3) interest in and to the minerals in and under" the same land in question. Neither of these leases made reference to the power of attorney or the Coleman-Albritton contract, nor did the later lease purport to provide for any "reversion" to the Colemans or other rights in their behalf. Both leases evidently expired long before the instant suit.

While we do not regard the matter as of controlling importance by itself, it is evident to any informed person in an oil-producing state, that the conditional interest decreed to exist is a quite peculiar one. According to the language of the trial court (which reflects the position of the respondent-plaintiff) if the parties to the power of attorney "should sell their interest or make an oil and gas lease upon a regular commercial lease for five years, thereafter the interest of said assignees (the attorneys) would terminate and all rights granted * * * would revert to W. A. Coleman and wife." Now it is obvious enough that if both parties *sold* their rights, the rights of the attorneys, as well as those of the Colemans, would terminate then and there, although it is difficult to see how there could be any 'reversion" to the Colemans under the same circumstances. As to the "or lease" portion of the condition, this evidently means that if a "regular commercial lease" should be executed for a primary term of five years, the interest of the attorneys would terminate at the end of those five years, whether the lease was still in force (by reason of discovery and production) or had then or sooner expired. At least this appears to be the position of the respondent-plaintiff in saying that the only benefits to the attorneys from their interest would be a share in the bonus money or a chance to negotiate an "overriding royalty" from the prospective lessee.

To grant a large fraction of the minerals and at the same time require the grantees in effect to forfeit it upon attempting to benefit from it in the usual way verges on the extraordinary. If the parties had in mind only such a limited right as a share in the bonus money for a lease, a conditional grant of the minerals was at best an unnecessarily complicated way by which to evidence their purpose. Furthermore the condition evidently does not apply, should the grantees elect to develop their interest themselves, instead of leasing it, which seems quite unusual, when at the same time their interest is to be forfeited by the mere act of making a lease. Again, the condition would not seem to apply if they should make a lease that was not "a regular commercial lease for five years," for example, a series of leases with primary terms of four years each, or a lease stipulating a given sum of money per month per well in lieu of royalty. It is hardly an exaggeration to say that an intent to create such a peculiar interest, and by the particular means used, is rather unlikely on its face.

The sole basis for it is, of course, the brief and confusing "And such lease" clause appearing at the very end of the instrument. It refers to, and prescribes terms for, a lease, which is evidently to be executed in the future, but which is also described as if already referred to in the instrument. Yet no "such lease" is anywhere referred to. It is not at all contended that the grant itself is the "lease," nor is any other language of the instrument pointed out by the respondent-plaintiff as meaning the "lease" referred to. Let us suppose—what is not far from the fact—that the entire instrument read,

"We, _____, hereby grant to _____, a one-third of seven-eighths interest in the minerals in Blackacre. And such lease to be a regular commercial lease for five years with reversion to us."

Such language could not be construed as meaning

"We hereby grant to_____a one-third of seven-eighths interest in the minerals in Blackacre with the condition that said interest shall terminate and revert to us upon the execution of a regular commercial lease for five years by_____ and ourselves of our interests in said minerals."

There is simply a lack of words to connect the last sentence to the first in the necessary fashion, including explanation of

the circumstances under which the "lease" might arise. We could not simply reason that the conditional estate might have been intended, and that otherwise it is quite difficult to say what the parties did mean.

The necessary connection and explanation is not to be found in the provisions immediately following the granting clause and stipulating what are apparently permissible alternatives where either the Colemans or the attorneys or both might desire to "sell" their respective interest. The purport of these provisions seems to be merly a statement that, in the event indicated, the parties might *either* (1) join in a "sale" to a third party, *or* (2) have a partition in terms of full mineral ownership of specific areas respectively, *or* (3) sell, one to the other. Under this language, it would appear that if, for example, the Colemans should wish to "sell," and the attorneys should not, the most the former could require the latter to do would be to accept a partition. Obviously, the partition would not be the "lease" referred to in the "And such lease" clause. It is thus very difficult, if not impossible, to say that the language in question or any portion of it explains the "And such lease" clause on the theory that the permissible alternative of a joint "sale" to a third party included in the term "sale" a joint lease, and that in the latter event the attorneys should forfeit their interest by joining in the lease, assuming the lease were "a regular commercial lease for five years." It would be at least highly unusual to intend that the attorneys might escape making any lease at all by insisting on a partition and yet that they would forfeit their interest if they should join in a lease.

While we have already decided that the instrument should be construed against its lawyer authors, and we agree that no part of an instrument is to be rejected altogether except as rather a last resort, it is yet true that the latter course is sometimes found to be necessary. See Kokernot v. Caldwell, Texas Civ. App., 231 S.W. 2d 528, wr. of er. refused. No doubt, it is possible to create the strange sort of estate which the respondent-plaintiff and the courts below say was meant; and, of course it is *possible* that this is what the parties meant to do. But such a mere possibility and the difficulty of saying what else the "And such lease" clause might mean are not enough to require us to adopt that construction, if the words of the latter clause do not justify it, as we consider that they do not. Considering the vagueness and apparent irrelevance of the clause in question, the failure of the parties to use the much simpler method that they might have used to vest in the attorneys the

very limited benefits which the respondent-plaintiff says to have been intended, and the quite unusual character of the alleged condition, which is said to be imposed on the grant, we think the better course is to follow the rule of favoring the granting clause at the expense of the later language, rather than limiting the former by a speculative conclusion as to the meaning of the latter, in order to give the latter some effect. The facts of Kokernot v. Caldwell, supra, are not altogether in point, but its theory is applicable. We do not understand the respondent-plaintiff to rely on Benge v. Scharbauer, 152 Texas 447, 259 S.W. 2d 166, and Woods v. Sims, supra, except for their statements of the general proposition that particular words or provisions of written instruments are not to be disregarded, where disregarding them can be, within reason, avoided. The facts of these two cases are not opposite, and the holdings rest in good part upon the fact that the words subsequent to the granting clause adequately referred to a different kind of estate than that dealt with in the latter. In the instant case the "And such lease" clause, if given the effect argued for, would not grant an additional and different estate but would qualify the estate granted by the granting clause, reducing its dignity from absolute to conditional. McMahon v. Christmann, 157 Texas 403, 303 S.W. 2d 341, is likewise relevant only as to general principles.

As foregoing has obviously taken no account of the Coleman-Albritton contract as a reason for upholding the construction made by the courts below.

Since, as stated, the respondent-plaintiff does not now appear to rely on this line of argument, we need say as to it only this much: that even assuming the wording of the Albritton contract to state clearly the very condition contended for, we find no authority to justify us in borrowing meaning from one instrument for the benefit of another, where completely different grantees are involved. Possibly the same lawyers drew both instruments, but there is nothing of record to indicate that they did, and, in fact, the granting clause of the Albritton contract, which purports to convey a like interest to that conveyed by the granting clause of the power of attorney, is yet worded quite differently from the latter. Albritton may well have his own lawyers.

For the reasons given, the judgments of both courts below are reversed except as to the defendant Albritton, and the cause is remanded to the trial court with instruction to enter final

judgment in accordance with the holdings hereinabove made as between the petitioners-defendant and respondent-plaintiff. Since the relief sought by the petitioners-defendant is in effect denied in part, costs will b divided between them and the respondent-plaintiff.

Opinion delivered November 20, 1957.