Mrs. Kate M. GIBSON, Individually, and as Independent Executrix of the Estate of G. W. Gibson, Deceased, et al., Appellants,

v.

Ahmittie (Minnie) WATSON et al., Appellees.

No. 7027.

Court of Civil Appeals of Texas.

Texarkana.

May 13, 1958.

Rehearing Denied June 24, 1958.

·Charles L. Wolfe, Henderson, Norman, Rounsaville & Hassell, Jacksonville, for appellants, Mrs. Kate M. Gibson, individually and as independent executrix under will of G. W. Gibson, Deceased, W. H. .Shook, J. W. Tyra and A. T. Tyra.

Fred Parks, Fred A. Collins, Houston, for appellant, Ahmittie (Minnie) Watson.

Wilson & Spivey, Tyler, for appellees, S. A. Cochran, Hennie Genecov, Randolph Genecov and Mrs. Rosa G. Ellis.

Fred Parks, Fred A. Collins, Houston, for appellee, Ahmittie (Minnie) Watson.

Norman, Rounsaville & Hassell, Jacksonville, for appellees, Mrs. Kate M. Gibson, individually and as independent executrix under will of G. A. Gibson, Deceased, and W. H. Shook.

FANNING, Justice.

This appeal involves the construction of two written instruments and the quantity of acreage conveyed in the first instrument.

Harrison C. Brisby was one of the four heirs of Corbin Brisby, patentee of the Corbin Brisby Survey in Cherokee County, Texas, which patent was issued by the State of Texas on April 19, 1927, long after the death of Corbin Brisby. Shortly prior to the issuance of the patent, to-wit, on March 27, 1927, Harrison C. Brisby, who inherited a ¼ interest in the Corbin Brisby Survey, executed and acknowledged a written instrument in favor of J. W. Tyra, W. H. Shook and G. W. Gibson, which is one of the subjects of controversy on this appeal. The instrument in question is a printed form with blank spaces filled in with typewritten additions and in some instances filled in by handwritten additions. The typewritten additions will be italicized and the handwritten additions will be capitalized. We quote from said instrument as follows:

"The State of Texas,
County of Cherokee } Know All Men By These Presents:

"That I, HARRISON C. BRISBY, of the County of *Cherokee,* State of Texas, ha*s* and by these presents do*es* grant, bargain, sell, convey, set over and assign and deliver unto *J. W. Tyra, W. H. Shook and G. W. Gibson,* the following, to-wit: *One-thirty second (1/32)* interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in *Cherokee* County, Texas, to-wit:

"Corrected Field notes of the Corbin Brisby Pre-emption of 160 acres of land situated in Cherokee County, Texas, about 20 miles North West from the town of Rusk, the County Site of Cherokee County, and are per survey made for and in response to the request of H. C. Brisby. The area so surveyed is a part of the original tract surveyed by Jas. P. Gibson, County Surveyor of said Cherokee County, Texas, on the 1st. day of October, 1873, and the field notes of said survey recorded in County Surveyor Records of Cherokee County, Texas, in Book Vol. D on page 288, and the area described in these corrected field notes is described by metes and bounds as follows. Situated on the Neches River:

BEGINNING at N. W. corner of said Corbin Brisby Original Survey, at a stake on the East bank of the Neches River, from which a water oak 18 ins. dia. brs S. 33 E. 7⁷⁄₁₀ varas. A Black Gum 18 ins. dia. brs. S. 27½ E. 16 varas.

"Thence East with S. B. line of M. Garcia Survey 1057 varas to stake, the N. E. corner of said original survey, on W. B. line of J. H. Shaw Survey, from which a pine 16 ins. dia. brs. S. 33 E. 8½ varas, P. O. 20 ins. dia. brs. S 23 varas;

"Thence South with W. B. line of said Shaw Survey and W. B. line of R. Smithers survey No. 202, 993 varas to angle corner of said R. Smither Survey, stake from which a post oak 12 ins. dia. brs S 3⁹⁄₁₀ varas, a red oak 20 ins. dia. brs. S. 16 W. 12 varas;

"Thence West 408 varas to another corner of said Brisby original survey, and N. W. corner of R. Smither Survey No. 202, a stake from which a pin oak 6 ins. dia.

brs. N. 57 E. 6½ varas, pin oak 4 ins. dia. N. 7 E. 1 and ½ varas;

"Thence North 70 varas to stake for corner, a forked pin oak 16 ins. dia. brs. S. 17 feet. Pin oak 12 ins. dia. brs. S. 85 W. 34 feet;

"Thence West at 187 varas cross a slough C S. E. and a road N. E. at 313 varas to a stake in the East margin of the Neches River from which a S. G. 10 ins. dia. brs. N. 29 W. 14 feet, and a pin oak 24 ins. dia. brs. N. 16 E. 29 feet;

"Thence with the meanderings of the East margin of said River as follows: N 27 W 220 varas, N. 52 W 115 varas, N 21 W 127 varas, N 40 W 60 varas. N 75 E 85 varas. N. 18 W 155 varas. N. 28 W. 250 varas. N. 89 varas to the place of beginning. Containing 160 acres of land.—Surveyed the 28th. day of March, A. D., 1927, by L. T. Moore, County Surveyor of Cherokee County, Texas. (Field Notes are typewritten.) together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom.

"And said above described lands being now under an oil and gas lease originally executed in favor of *Not leased*
and now held by

, it is understood and agreed that this sale is made subject to said lease, but covers and includes *one-fourth* of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

"It is agreed and understood that *one-fourth* of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said *J. W. Tyra, W. H. Shook & G. W. Gibson,* and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by HARRISON C. BRISBY *and J. W. Tyra, W. H. Shook and G. W. Gibson,* and each owning *¾ and ¼* interest in all oil, gas and other minerals in and upon said land, together with *one-fourth* interest in all future rents.

"This sale is made for and in consideration of the sum of *one dollar cash and other good and valuable considerations cash* in hand paid, the receipt of which is hereby acknowledged.

"To Have And To Hold, the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said *J. W. Tyra, W. H. Shook & G. W. Gibson, their* heirs and assigns forever, and *I* to [sic] hereby bind ourselves, heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said *J. W. Tyra, W. H. Shook and G. W. Gibson, their* heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness *my* hand this, the *28th.* day of *March,* A.D. 1927.
          "HARRISON C. BRISBY
          ————————."

---

The trial court construed the above instrument from Harrison C. Brisby to Tyra, Shook and Gibson as conveying a ⅟₃₂ interest in the minerals which carried with it by operation of law ⅟₃₂ interest in the ⅛ royalty under the land specifically described (which the trial court found to be 155.74 acres) rather than the 160 acres generally described.

Appellants as to the court's construction of this deed, Mrs. Kate M. Gibson, individually and as independent executrix under the will of G. W. Gibson, deceased, W. H. Shook, J. W. Tyra and A. T. Tyra, contend on appeal that the trial court's construction of the deed in question was erroneous and that the deed conveyed ¼ of the usual ⅛ royalty as well as one-fourth of

the minerals under the entire Corbin Brisby survey.

The appellees as to the deed in question are as follows: Ahmittie (Minnie) Watson, S. A. Cochran, Hennie Genecov, Rudolph Genecov, Henry Lee Carter and Mrs. Rosa G. Ellis. Ahmittie (Minnie) Watson was a daughter and heir of Harrison C. Brisby, deceased, who inherited an undivided one-fourth interest in and to all minerals and royalties which Harrision C. Brisby retained after the execution of the deed in question, subject to an outstanding oil, gas and mineral lease held by Humble Oil & Refining Company. (Harrison C. Brisby died April 29, 1938, intestate, with no administration on his estate and none was necessary.) Appellees S. A. Cochran, Hennie Genecov, Rudolph Genecov, Harry Lee Carter, and Mrs. Rosa G. Ellis (who hold under various heirs of Harrison C. Brisby) were adjudged various interests in the mineral estate in controversy by the trial court as shown by the record.

The appellees above named contend that the trial court correctly construed the deed above referred to.

Appellants and appellees alike cite the various rules for construction of deeds. They also each rely on the cases of Garrett v. Dils Co., Tex.Sup., 299 S.W.2d 904, and Porter v. Shaw, Tex.Civ.App., 12 S.W.2d 595, n. w. h., and each contends that by analogy these cases support their respective constructions of the deed.

Among other cases cited by appellants are the following: Tipps v. Bodine, Tex. Civ.App., 101 S.W.2d 1076, wr. ref.; Benge v. Scharbauer, Tex.Civ.App., 259 S.W.2d 166; Woods v. Sims, 154 Tex. 59, 273 S.W. 2d 617, and many others.

Among other cases cited by appellees are the following: Germany v. Turner, 132 Tex. 491, 123 S.W.2d 874; Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563; Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617; Kokernot v. Caldwell, Tex.Civ.App., 231 S.W.2d 528, wr. ref., and many others.

The trial court admitted in evidence over the pertinent objections of appellees an oil and gas lease dated December 10, 1926, from Harrison C. Brisby to Jeff D. Jones covering the land described in the deed under controversy here, but acknowledged three days after the execution of the subject deed to Tyra, Shook and Gibson. Although admitted in evidence, the trial court apparently did not give any consideration to the lease in construing the subject deed in question. It is our opinion that this lease should not be considered in the construction of the subject deed for the following reasons:

(1) The deed specifically recites that the subject premises are "not leased." The words "Not leased" were typewritten and control over the printed form recitals of an existing lease. See J. K. Hughes Oil Co. v. Mayflower Investment Co., Tex.Civ. App., 193 S.W.2d 971, wr. ref., wherein it is stated:

"Where there is a repugnance between a printed portion of a deed and a written or typewritten part, the written or typewritten part controls."

(2) As a matter of fact and law, there was no then existing lease. Though dated earlier, the lease was not acknowledged until three days after the date and acknowledgment of the deed. The lease was not effective until it was delivered. There is evidence that the lease was not delivered until its acknowledgment on March 31, 1927, after execution and acknowledgment of the subject deed here in question because such deed recited that the subject premises were "not leased." There was no evidence in the record to rebut an implied finding by the trial court that the lease in question, acknowledged three days after the subject deed, had not been delivered prior to its acknowledgment and prior to the execution of the deed in question, which recited that the subject premises were not leased. In this connection see the case of Polk v. Carey, Tex.Civ.App., 247 S.W. 568, wr. dis.

■ Neither party has pleaded that the deed in question is ambiguous and each party relies on it as it is written. Therefore, the meaning of the deed and the intention of the parties must be ascertained from the language contained in the deed. 12 Am. Jur. 748.

In Garrett v. Dils Co., Tex.Sup., 299 S.W. 2d 904, 906, it is stated:

"In construing the deed we shall be guided by the well-established rule which we recently reaffirmed in Harris v. Windsor, Tex., 294 S.W.2d 798, 799, 800, in this language:

" 'We have long since relaxed the strictness of the ancient rules for the construction of deeds, and have established the rule for the construction of deeds as for the construction of all contracts,—that the intention of the parties, when it can be ascertained from a consideration of all parts of the instrument, will be given effect when possible. That intention, when ascertained, prevails over arbitrary rules. Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442.'

"Another applicable rule is that should there be any doubt as to the proper construction of the deed, that doubt should be resolved against the grantors, whose language it is, and be held to convey the greatest estate permissible under its language. Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551; Allen v. Creighton, Tex.Civ.App., 131 S.W.2d 47, er. ref.

"The question of immediate concern to the parties is the royalty to which the respondent is entitled under the existing lease. We shall approach the solution of that question by considering first the royalty to which it would have been entitled had there been production under the lease in existence when the deed was executed, and then determining from the language of the deed whether it was the intention of the parties that the royalty was to be the same under subsequent leases.

"Should the granting clause be considered alone there would be no doubt as to the interest conveyed. It states in certain terms that the interest conveyed was 'an undivided one sixty-fourth interest in and to all of the oil * * *.' Had other language in the deed not disclosed what the parties understood 'one sixty-fourth' to mean, it would be our duty to give those words their usual meaning and construe the deed as a mineral deed to an undivided one sixty-fourth of the minerals in place. But there follows the granting clause language which clearly defines what the parties understood 'one sixty-fourth' of the minerals to mean. After reciting that the land was under an oil and gas lease, the deed provided that 'it is understood and agreed that this sale * * * covers and includes one-eighth of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.' Construing all of these provisions together it is made certain that what the parties intended to convey, had there been production under the then existing lease, was a royalty of one sixty-fourth or one-eighth of the one-eighth royalty retained in the lease. The rights conveyed by the deed under the then existing lease were one-eighth of the money rentals which might be paid to extend the term within which a well might be begun and one-eighth of the one-eighth royalty." (Emphasis added.)

In Germany v. Turner, 132 Tex. 491, 123 S.W.2d 874, 877, it is stated:

"While it is of course the duty of the Court to consider all parts of a deed, and if possible determine the intention of the grantors from a consideration of all its parts, giving effect to all parts if that can be done, yet it is not infrequent that a situation arises where it becomes necessary to resolve a conflict

between certain portions of the deed. It is well settled that if there be an irreconcilable conflict between the granting, habendum and warranty clauses on the one side, and the premises or recitals on the other, the premises or recitals must yield to the other portions. Moore v. City of Waco, 85 Tex. 206, 20 S.W. 61; Burgess v. McCommas, 61 Tex.Civ.App. 246, 129 S.W. 382, wr. ref.; Kynerd v. Hulen, 5 Cir., 5 F.2d 160."

In Kokernot v. Caldwell, Tex.Civ.App., 231 S.W.2d 528, 531, wr. ref. it is said:

"In Kynerd v. Hulen, 5 Cir., 5 F.2d 160, 161, it was held: 'But since the purpose of the granting clause of a deed is to define and designate the estate conveyed, in case of conflict it prevails over other clauses.'

"Repugnance invokes the rule of construction announced in Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360, 363, as follows: 'Whenever the first part of a deed is definite and certain and irreconcilable with later parts, the first part must prevail. Wallace v. Crow, Tex., 1 S.W. 372; Witt v. Harlan, 66 Tex. 660, 2 S.W. 41.'

"Another rule of construction pertinent to the facts of this case is stated in Coffee v. Manly, Tex.Civ.App., 166 S.W.2d 377, 380: 'However, the question, in our opinion, has been answered by our Supreme Court as follows: "It is not permissible to give controlling effect to that which creates an ambiguity, and destroys the certainty which is expressed by other language, and thus overthrows the clear and explicit intention of the parties." Cartwright v. Trueblood, 90 Tex. 535, 39 S.W. 930, 932.'

"But appellants cite the case of Acklin v. Fuqua, Tex.Civ.App., 193 S.W.2d 297, 299, as being contrary to these holdings. Such case merely holds that two separate mineral estates may be created in the same instru-

ment. To this we agree, if the proper language is used and the granting clause by reasonable construction can be said to create each of the estates, or, where the granting clause has language which taken with supplementary language in other portions of the deed, so provides." (Emphasis added.)

A recent case by the Supreme Court of Texas is the case of McBride v. Hutson, Tex.Sup., 306 S.W.2d 888, 894, opinion by Justice Garwood. We quote from this opinion in part as follows:

"* * * we agree that no part of an instrument is to be rejected altogether except as rather a last resort, it is yet true that the latter course is sometimes found to be necessary. See Kokernot v. Caldwell, Tex.Civ.App., 231 S.W.2d 528, wr. of er. refused. No doubt, it is possible to create the strange sort of estate which the respondent-plaintiff and the courts below say was meant; and, of course it is possible that this is what the parties meant to do. But such a mere possibility and the difficulty of saying what else the 'And such lease' clause might mean are not enough to require us to adopt that construction, if the words of the latter clause do not justify it, as we consider that they do not. * * * We think the better course is to follow the rule of favoring the granting clause at the expense of the later language, rather than limiting the former by a speculative conclusion as to the meaning of the latter, in order to give the latter some effect. The facts of Kokernot v. Caldwell, supra, are not altogether in point, but its theory is applicable." (Emphasis added.)

■■ It is clear that the granting clause of the subject deed conveyed a ½₂ interest in the minerals in place on the land specifically described by the deed. And the granting clause, taken by itself, carried with it a corresponding interest in the royalty.

While the parties to a conveyance may stipulate otherwise, if they fail to do so, there is conveyed a corresponding interest in the royalty. Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617.

The royalty clause reads as follows:

"And said above described lands being now under an oil and gas lease originally executed in favor of *Not leased* and now being held by ———, it is understood and agreed that this sale is made subject to said lease, but covers and includes *one-fourth* of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease." (Emphasis added.)

As above stated, the typewritten words "not leased" will clearly control over the printed form recitals of an existing lease. Therefore the deed must be construed as being based on the premise that there was no existing lease, and as above held, in fact there was no outstanding lease at the time of the execution and delivery of the deed in question. But appellant forcefully argues that the words "one-fourth" (also typewritten) must be given meaning and effect. However, the "one-fourth" is limited to royalty under an existing lease— since the parties stated that the land was "not leased" and that in fact there was no existing lease, one-fourth of nothing would still be nothing. Construing the royalty clause according to the language it contains, it must be held that the words of such clause itself do not convey anything since the land was "not leased." We have also carefully examined all of the other provisions of the deed and do not find any other provisions which would *clearly show* that the parties meant to convey a larger interest in the minerals than was set out in the granting clause.

The delay rental clause in the above referred to deed reads as follows:

"It is agreed and understood that . *one-fourth* of the money rentals which may be paid to extend the term within which a well may begun under the terms of said lease is to be paid to the said J. W. Tyra, W. H. Shook & G. W. Gibson, * * *".

The reverter clause in the above referred to deed reads as follows:

"and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by Harrison C. Brisby and *J. W. Tyra, W. H. Shook and G. W. Gibson,* each owning ¾ and ¼ interest in all oil, gas and other minerals in and upon said land, together with *one-fourth* interest in all future rents."

What we have said with reference to the royalty clause above is also applicable to the delay rental and reverter clauses. Since there was no existing lease covering the land, there were no delay rentals to assign. The possibility of reverter was based upon the premise of an existing lease—since there was no existing lease, there was no reversionary estate to convey as the very wording of the clause required and was based on the existence of a lease. Since there was no existing lease, nothing was conveyed by the reverter clause.

In Garrett v. Dils Company, supra, the Supreme Court was divided five to four. The majority held to the effect that there was other language in the deed which expanded the interest specifically conveyed in the granting clause and stated [299 S.W.2d 906]: "But there follows the granting clause language which *clearly* defines what the parties understood 'one sixty-fourth' of the minerals to mean." (Emphasis added.) In the Garrett v. Dils Co. case the land in question was subject to an existing lease and the deed so stated. The deed under consideration here stated that the land was "not leased" and in fact the land was not leased at the time of the execution and delivery of such deed.

Both parties contend that the case of Porter v. Shaw, Tex.Civ.App., 12 S.W.2d 595, no writ history, supports their respective theories and they each forcefully argue various features of the Porter v. Shaw case. We have reached the conclusion, however, that such case is not closely in point with the facts of the case at bar involving the Tyra, Shook, Gibson deed and should not be considered as controlling or decisive authority for either side. This is also especially true inasmuch as there is no writ history on the Porter v. Shaw case, and inasmuch as there are authoritative pronouncements of principles of law from the Supreme Court of Texas in the cases of Germany v. Turner, supra, and McBride v. Hutson, supra, which we think are particularly applicable to the peculiar facts in this case with reference to the construction to be given the Tyra, Shook, Gibson deed.

■ Construing the deed in question from its four corners we can not say that there is language in the deed which *clearly shows* that the parties intended to expand or increase the granting clause. It is of course possible that the parties intended to expand this clause to convey the interests contended for by appellants, but the speculative possibility of this is not enough to require us to adopt such construction if the words of the clauses in question do not justify it, as we consider they do not. We think the better course in construing this deed is to follow the rule of favoring the granting clause at the expense of the later clauses which contain repugnant language, rather than expanding the granting clause by a rather speculative conclusion as to the meaning of the later repugnant language, in order to give the later language some effect. In this connection see McBride v. Hutson, supra, 306 S.W.2d 888, and Kokernot v. Caldwell, supra, 231 S.W.2d 528, wr. ref.

■ We have carefully considered all of the authorities cited in the excellent briefs of the parties. We have found no authority exactly in point with the facts in this case, but have carefully weighed all of the rules of construction cited by the parties. In the final analysis each deed must be construed from the language used in that particular deed and the language in the deed above referred to supports the construction of the trial court. We hold that the trial court correctly construed the above referred to deed and we affirm that portion of his judgment.

Appellants Gibson, Shook, Tyra and Tyra contend that the trial court erred in holding that the deed from Harrison C. Brisby to Tyra, Shook and Gibson was confined to 155.74 acres rather than the whole pre-emption survey of 162.26 acres.

The Corbin Brisby Survey was a pre-emption survey under the laws of Texas. Under the law only 160 acres was patentable. The deed in question was executed prior to the issuance of the patent. The patent was issued April 19, 1927. Long after the patent was issued a survey by Humble Oil & Refining Company revealed that the survey contained 162.26 acres instead of 160 acres. The description in the deed has heretofore been quoted. This description, while referring to the "Corbin Brisby Pre-emption survey of 160 acres" and stating "containing 160 acres," also gives a metes and bounds description of the land conveyed. The trial court found that the metes and bounds description covered only 155.74 acres. This part of the controversy is apparently brought about by the fact that while the deed field notes follow closely those of the patent, there is a divergence when the terminal point is reached on the call reading: "Thence West 408 varas etc." Here the field notes of the deed deviate to the north, the call being: "Thence *North* 70 varas" and "Thence West a total of 313 varas to the East margin of Neches River." On the other hand, in the field notes of the patent, at said terminal point the next call is *South* 47 varas, and thence West to Neches River. Consequently, there is a strip off the South end of the Brisby Survey 117 varas wide, not covered by the description in the deed.

It is well-settled law that "a general description may be looked to in aid of a particular description that is defective or doubtful, but will not control or override a particular description about which there can be no doubt." 14–B Tex.Jur., Deeds, Sec. 236. Also in 14–B, Tex.Jur., p. 296, Deeds. Sec. 236, it is stated: "And, if a general and a particular description are obviously intended to refer to the same land, and the two cannot be reconciled, the particular description is preferred to the more general."

We hold that the trial court did not err in holding that the deed above referred to conveyed the 155.74 acres specifically described rather than the 160 acres pre-emption survey generally described.

Ahmittie (Minnie) Brisby Watson who was one of the appellees with respect to the Tyra, Shook, Gibson deed above construed, is the appellant with respect to the trial court's judgment construing a deed hereinafter described from H. C. Brisby to G. W. Gibson and W. H. Shook. Mrs. Kate M. Gibson, individually and as independent executrix under the will of G. W. Gibson, deceased, and W. H. Shook, are appellees as to the trial court's judgment construing this deed. We quote from this deed as follows:

The State of Texas, ⎫ Know All Men By
County of Cherokee ⎭ These Presents:

"That *I, Rev. H. C. Brisby* of the County of Cherokee, State of Texas, have and by these presents do grant, bargain, sell, convey, set over and assign and deliver unto *G. W. Gibson & W. H. Shook* the following, to-wit: *One thirty second (1/32)* interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in *Cherokee* County, Texas, to-wit:

*An undivided one-half interest in and to a 22 acre tract and a 50 acre tract of land both on the J. H. Shaw survey and described as follows:*"

(here follows metes and bounds description)

*"Said two tracts of land containing 72 acres of land, more or less.*
together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom.

"And said above described lands being now under an oil and gas lease originally executed in favor of *J. W. Tyra* and now held by *J. W. Tyra,* it is understood and agreed that this sale is made subject to said lease, but covers and includes *one-fourth* of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

"It is agreed and understood that *None* of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said *G. W. Gibson & W. H. Shook,* and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by *Rev H C Brisby* and *G. W. Gibson and W. H. Shook* each owning *shown* interest in all oil, gas and other minerals in and upon said land, together with *one-fourth* interest in all future rents.

"This sale is made for and in consideration of the sum of *One Hundred Twenty Five* Dollars, cash in hand paid, the receipt of which is hereby acknowledged.

"To Have And To Hold, the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said *G. W. Gibson & W. H. Shook, their* heirs and assigns forever,

and *I* do hereby bind ourselves, heirs executors and administrators to warrant and forever defend all and singular the said property unto the said *G. W. Gibson & W. H. Shook,* their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness *my* hand this, the *30th* day of *April,* A. D. *1927.*

"REV. H. C. BRISBY
————————"

The above deed was on a printed form— the typewritten parts are italicized, the handwritten signature is capitalized.

At the time of the execution of the Brisby to Gibson and Shook deed above referred to, Brisby's one-half interest in the land was under an existing oil, gas and mineral lease to J. W. Tyra (as recited in the deed) providing for the payment of the usual one-eighth royalty, dated March 24, 1927, and duly recorded. It is the usual ⅞ lease providing for the usual ⅛ royalty.

No evidence was introduced by any party as to the intention of the parties to this deed. The problem of this Court is to construe the deed from its four corners.

The trial court construed the deed as passing to Gibson and Shook ¼ of the royalty in the ½ interest owned by H. C. Brisby in the two tracts described in the deed, and awarded to Mrs. Kate M. Gibson, individually and as Independent Executrix 4.44875/71.18, and W. H. Shook 4.44875/71.18 of the royalty, both of whom contend that this judgment in this respect is correct. (The land in question was under a valid lease held by Humble Oil & Refining Company who was producing oil from said land and had paid royalties into the registry of the court.) A like interest was awarded in the funds paid into the court, with respect to the award of interest in this land.

Parties S. A. Genecov, Hennie Genecov, Rudolph Genecov and Rosa G. Ellis are conditionally asking that in the event the court reverses the lower court in connection with the deed from Brisby to Tyra, Shook and Gibson on the Brisby Survey that they be awarded a larger interest in the Shaw Survey because the deed under which they hold conveys an acreage interest out of both surveys and that they are entitled to the full acreage regardless of in which survey their grantors owned such amount of interest. Since we are affirming the judgment of the trial court, it becomes unnecessary to discuss such matter.

We have already referred to various rules of construction with reference to deeds and various authorities in our disposition of the case with respect to the construction of the Brisby to Tyra, Shook and Gibson deed. For this reason we will not repeat a reference to same.

We have carefully considered all the cases cited by appellants and appellees as to the Brisby to Gibson and Shook deed and have reached the conclusion that the nearest cases in point are Tipps v. Bodine, Tex.Civ.App., 101 S.W.2d 1076, wr. ref., and Garrett v. Dils Co., supra, 299 S.W.2d 904. We think Tipps v. Bodine and Garrett v. Dils Co., support the trial court's construction of the Brisby to Gibson and Shook deed and we affirm that portion of the trial court's judgment.

The judgment of the trial court in all respects is affirmed.