James ALFORD et al., Petitioners,

v.

Minnie KRUM et al., Respondents.

No. C–1905.

Supreme Court of Texas.

June 20, 1984.

Rehearing Denied July 18, 1984.

Miller, Miller & Robinson, Thomas K. Robinson, Gonzales, for petitioners.

David F. Farris, Fort Worth, for respondents.

BARROW, Justice.

This is a suit to construe a mineral deed executed in 1929 by Mr. and Mrs. Frank Koncaba in favor of Walter A. Mang. The Alfords and others are successors of the Koncabas, the original grantors. Minnie Krum and others are the successors to Mang, the original grantee. After a non-jury trial, the trial court rendered judgment construing the deed to mean that the Koncabas conveyed only an undivided one-sixteenth mineral interest in an 85.9 acre tract. The court of appeals, with one justice dissenting, reversed the judgment, holding that the Koncabas conveyed a one-half interest in the permanent mineral estate. 653 S.W.2d 464 (1982). We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

When the Koncabas executed their 1929 deed, there was an outstanding oil and gas lease on the tract of land. That lease terminated after the date of the deed. The deed that we must construe, with numbers added to the paragraphs, contains these words:

1. THAT Frank Koncaba and wife Josefa Koncaba of the County of Gonzales, State of Texas, has and by these presents do grant, bargain, sell, convey, set over and assign and deliver unto Walter A. Mang the following to-wit: one-half of the one-eighth interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Gonzales County, Texas, to wit:

Book 86, pages 540, 541, 542 Under date July 2, 1912.

Situated in Gonzales County State of Texas, on the waters of Peach Creek and being a sub-division of a 500 acre tract granted to the heirs of Robt. Davidson. [Followed by metes and bounds description of 85.9 acres.]

2. ... together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom.

3. And said above described lands being now under an oil and gas lease originally executed in favor of Cranfill-Reynolds and now held by them, it is understood and agreed that this sale is made subject to said lease, but covers and includes $\frac{1}{16}$ of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

4. It is agreed and understood that none of the money rentals which may be paid to extend the terms within which a well may be begun under the terms of said lease is to be paid to the said Walter A. Mang, and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by Walter A. Mang of Gonzales Texas and Frank Koncaba and wife, Josefa Koncaba each owning a one-half interest in all oil, gas and other minerals in and upon said land, together with one-half interest in all future rents.

Because the lease that was in effect at the time of this conveyance has since expired, the only question presented for resolution is the quantum of the permanent mineral estate intended to be conveyed by the terms of this deed.

■ Long-standing rules of interpretation and construction control the disposition of this cause. The primary duty of the courts in interpreting a deed is to ascertain the intent of the parties. *Terrell v. Graham,* 576 S.W.2d 610, 612 (Tex.1979); *McMahon v. Christmann,* 157 Tex. 403, 303 S.W.2d 341, 344 (1957). This rule of construction, however, must be modified with the restriction that it is not the intention that the parties may have had but failed to express in the instrument, but it is the intention that is expressed by said instrument. That is, the question is not what the parties meant to say, but the meaning of what they did say. *Canter v. Lindsey,* 575 S.W.2d 331, 334 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *Davis v. Andrews,* 361 S.W.2d 419, 423 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). Finally, "[w]e must construe this language as it is written and we have no right to alter it by interpolation or substitution." *Dahlberg v. Holden,* 150 Tex. 179, 238 S.W.2d 699, 701 (1951).

■ In seeking to ascertain the intention of the parties, the court must attempt to harmonize all parts of a deed, since the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617, 620 (1954). On the other hand, we realize that irreconcilable conflicts do exist; therefore, when it is impossible to harmonize internally inconsistent expressions of intent, the court must give effect to the "controlling language" of the deed and not allow ambiguities to "destroy the key expression of intent" included within the deed's terms. *Texas Pacific Coal & Oil Co. v. Masterson,* 160 Tex. 548, 334 S.W.2d 436, 439 (1960).

■ In cases involving the construction of mineral deeds, the "controlling language" and the "key expression of intent" is to be found in the granting clause, as it defines the nature of the permanent mineral estate conveyed. *Kokernot v. Caldwell,* 231 S.W.2d 528, 531–32 (Tex.Civ.App.—Dallas 1950, writ ref'd). It logically follows that when there is an irreconcilable conflict between clauses of a deed, the granting clause prevails over all other provisions. *Lott v. Lott,* 370 S.W.2d 463, 465 (Tex. 1963); *Waters v. Ellis,* 158 Tex. 342, 312 S.W.2d 231, 234 (1958).

■ In the case here, the Koncabas, the Alfords' predecessors in title, clearly conveyed to Mang, the Krums' predecessor in title, "one-half of the one-eighth interest," or an undivided one-sixteenth interest, in and to all of the oil, gas, and other minerals in and under the described tract of land. A grant such as this is a fee estate in the minerals in place. Two incidents of this estate are the right to participate in lease benefits and the right to a fractional interest in the possibility of reverter accompanying an outstanding lease. R. Hemingway, *The Law of Oil and Gas* § 9.1, at 456 (2d ed. 1983); 3A W. Summers, *The Law of Oil and Gas* § 601 (2d ed. 1958).

Since this is not a suit for rescission or reformation of a deed, we may not indulge in the assumption that the drafter of the deed mistakenly inserted the fraction "one-half of the one-eighth" rather than "one-half." We are bound by the intent of the parties as expressed by the language in the deed. Therefore, we must determine whether we may legitimately expand or increase the permanent mineral interest specifically conveyed in the granting clause.

The court of appeals held that the phrase, "each owning a one-half interest in all oil, gas and other minerals in and upon said·land, together with one-half interest in all future rents," which is contained in the fourth paragraph of the deed, defines the nature and extent of the permanent mineral estate in the subject premises. We disagree. The decision of the court of appeals not only disregards the express intent of the parties in the controlling part of the deed to limit the grant to a one-sixteenth mineral interest, but it also circumvents the well-established purpose of "future lease" clauses.

■ The purpose of the future lease clause is to explain or restate the operative effect of the grant in the granting clause in the event that any present lease terminated and that future leases were executed. R. Hemingway, *The Law of Oil and Gas* § 9.1, at 457; 3A W. Summers, *The Law of Oil and Gas* § 606, at 375–82; *cf.* 2 H. Williams & C. Myers, *Oil and Gas Law* § 340.2, at 238, 242 (1981). Consequently, Texas courts generally have treated the fractional interests in the last phrase of the future lease clause as nothing more than a restatement or confirmation of the interest deeded in the previous portions of the instrument. *See Delta Drilling Co. v. Simmons,* 161 Tex. 122, 338 S.W.2d 143, 145 (1960); *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d at 619; *Humble Oil & Refining Co. v. Harrison,* 146 Tex. 216, 205 S.W.2d at 355, 357–60 (1947); *Richardson v. Hart,* 143 Tex. 392, 185 S.W.2d 563, 565 (1945); *see also Fleming v. Ashcroft,* 142 Tex. 41, 175 S.W.2d 401, 405 (1943); *Kokernot v. Caldwell,* 231 S.W.2d at 531–32; *Cannon v. Wingard,* 355 S.W.2d 776 (Tex.Civ.App. —Dallas 1962, writ ref'd n.r.e.). Furthermore, commentators have noted that these clauses are "redundant," "unnecessary," and useful only when the meaning of the granting clause is not clearly apparent. R. Hemingway, *The Law of Oil and Gas* § 9.1, at 457, 463; 3A W. Summers, *The Law of Oil and Gas* § 606, at 382.

This Court has consistently held that "[i]t is not permissible to give controlling effect to that which creates an ambiguity, and destroys the certainty which is expressed by other language, and thus overthrow the clear and explicit intention of the parties." *Cartwright v. Trueblood,* 90 Tex. 535, 39 S.W. 930, 932 (1897); *see also* R. Hemingway, *The Law of Oil and Gas* § 9.1, at 461. We have, therefore, given effect to the "controlling language" in the mineral deed—the granting clause. *See, e.g., Waters v. Ellis,* 158 Tex. 342, 312 S.W.2d 231; *Kokernot v. Caldwell,* 231 S.W.2d 528; *Allen v. Creighton,* 131 S.W.2d 47 (Tex.Civ.App.—Beaumont 1939, writ ref'd); *Farmers Canal Co. v. Potthast,* 587 S.W.2d 805 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

■ The present mineral deed falls within the parameters of the foregoing rule because an irreconcilable conflict exists between the granting clause and the future lease clause; the former should control. Moreover, the future lease clause, as a

whole, is unclear, and it is improper to give effect to it, especially at the expense of the granting clause. We must resolve the conflict and lack of clarity in favor of the clear and unambiguous language of the granting clause and hold that the deed conveyed only a perpetual one-sixteenth mineral interest to Mang. Since there was no prayer for reformation of the deed, the trial court correctly determined that the mineral deed conveyed only an undivided one-sixteenth mineral interest.

The judgment of the court of appeals is reversed and that of the trial court is affirmed.

POPE, C.J., dissents with opinion in which CAMPBELL and SPEARS, JJ., join.

POPE, Chief Justice, dissenting.

I respectfully dissent. The court has correctly construed the first three paragraphs of the Koncabas' deed, to hold that the Koncabas conveyed "one-half of the one-eighth interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands." That part of the mineral deed is not in dispute. The Koncabas, we agree, conveyed a one-sixteenth mineral interest.

The third paragraph recognized that there was an outstanding oil and gas lease and expressly made the mineral deed to the one-sixteenth of the oil, gas and other minerals subject to that lease. The court also holds that the deed presently conveyed the possibility of reverter to that fractional interest upon the termination of the outstanding lease. 3A W. SUMMERS, THE LAW OF OIL AND GAS, § 601 (2d ed. 1958). We are in agreement to this point.

The court appears to cease reading the deed at this point. Paragraph four presently granted to the Koncabas a different and a greater estate upon the termination of the outstanding lease. We shall quote the entire paragraph:

4. It is agreed and understood that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Walter A. Mang, *and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event,* the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by Walter A. Mang of Gonzales Texas and Frank Koncaba and wife, Josefa Koncaba each owning a one-half interest in all oil, gas and other minerals in and upon said land, together with one-half interest in all future rents. [Emphasis added.]

The clause that is emphasized in the quotation is the ridgepole that divides the rights conveyed before reverter from those conveyed after the reversion. The court has ignored the different estates before and those after termination of the lease. Every clause and sentence of the first three paragraphs shows that no more than one-half of one-eighth of the minerals were conveyed. The clause in the middle of paragraph four states that upon reversion of the outstanding lease, the estate conveyed was greater. The paragraph consistently states this three times and in three ways. Whereas the opening clause of paragraph four stated that none of the rentals would be payable to the grantee under the existing lease; after the reversion, the lease interest "and all future rentals on said land, shall be owned jointly by the grantors and the grantee." Consistent with that statement is the next one concerning the quantum of the grant to the grantee by the grantors that states they "each own a one-half interest in all oil, gas and other minerals." Finally, unlike the first clause which stated that no rentals would go with the grant; after the reversion, the named grantee and the named grantors would each receive "one-half interest in all future rents."

If the Koncabas intended paragraph four to be a restatement of what was already conveyed, why was it needed or inserted at all? If it were intended to convey the same estate, why did the grant state "one-half of

one-eighth" in the first paragraph but "one-half" in the fourth paragraph? If the fourth clause were merely redundant and unnecessary, why did the first clause reserve all rentals to the grantors but change the grant to one-half of the rentals upon reversion? One-half of the rentals would logically follow from a grant of one-half of the minerals.

The court cites rules of construction but fails to read the document. The court cites textwriters who write about ambiguous documents. There is no ambiguity in the deed that grants a one-sixteenth mineral estate so long as there is an outstanding lease and a one-half mineral estate upon the lease's termination. The fractions are different for good reason. Indeed, there are cases in which a future clause is no more than a restatement or confirmation of an interest deeded in a previous part of an instrument. Those are cases in which it appears that the same interest is incorrectly expressed in two ways.

The court cites cases that do not support its decision. *Delta Drilling Co. v. Simmons*, 161 Tex. 122, 338 S.W.2d 143, 145 (1960), in fact supports my construction. The grantor conveyed a one-fourth interest in all minerals subject to an outstanding lease. It then conveyed the same one-fourth mineral interest upon reversion. The court gave effect to the before and after grant because they were consistent. Although identical, the before and after grants of fractional interests were held to be two grants. In the present case, the before and after grants of fractional interests are two grants, but here they are different. In both instances, the language is unambiguous.

*Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 621 (1954), recognizes that the same instrument can grant two different estates, but the case is not helpful. The court in that case construed a deed in which the interests listed in the granting clause, the subject-to clause, and the future lease clause were consistent; but the acreage was mistakenly described as 200 acres when a later survey showed that there were 226.88 acres of land. The deed conveyed a 25/200 mineral interest in lands described as 200 acres. The deed contained an additional provision, not found in the Koncabas' deed, that created an ambiguity. The provision was: "It being the intention of the grantor to convey and of the Grantee to Purchase an undivided Twenty-five acre mineral interest in and to all of the oil, gas, and other minerals in and under the above described land." The issue in *Woods* was whether the grantee received 25/200 of 200 acres or 25/200 of 226.88 acres. We have no such ambiguity in our case.

In *Richardson v. Hart*, 143 Tex. 392, 185 S.W.2d 563 (1945), the question was the construction of a deed that conveyed one-sixteenth of one-eighth of all the *oil, gas and other minerals* in a ten-acre tract burdened by an outstanding lease. The deed also contained a confusing paragraph that stated it was agreed that there was an outstanding lease to which the deed was subject, but that the deed covered one-sixteenth of one-eighth of all *of the oil royalty.* The royalty in the outstanding lease was a one-eighth. The two provisions presented an ambiguity—whether the permanent mineral deed of a $1/128$th interest entitled the grantee to $1/128$th of the oil produced or $1/128$th of the one-eighth royalty. The court in *Richardson* held that the grantee, under those two provisions, received one-sixteenth of one-eighth of one-eighth. *Id.* at 565. We have no ambiguity or inconsistency in the present case. *Richardson* does not address the grantee's rights in the minerals after the outstanding lease expired, because it had not expired. The problem was that one part of the deed granted a permanent $1/128$th interest in minerals and another paragraph granted $1/128$th in the one-eighth royalty. That is not our problem.

*Kokernot v. Caldwell*, 231 S.W.2d 528 (Tex.Civ.App.—Dallas 1950, writ ref'd), has also been misread as authority for the court's decision. In *Kokernot* the grantor conveyed a one-half interest in oil, gas and minerals by a mineral deed for a term of twenty years. To protect himself against a

breach of warranty, he expressly recognized an outstanding lease and made the deed subject to the terms of that lease. The deed also contained the provision that upon expiration of the outstanding lease, the grantee was to receive an undivided one-half of the lease interest, future rentals and one-half of the oil, gas and other minerals. The court ruled that the twenty-year term was also a limitation upon the one-half of the minerals granted after the expiration of the lease. *Id.* at 532. The construction of the deed in *Kokernot,* viewed as a whole, and my construction of the deed in our present case, viewed the same way, reveal no inconsistency in construction. Unlike *Kokernot,* the present case does not involve a term limitation in the grantors' deed. Also unlike *Kokernot,* in our case, before termination of the lease the grantee received only a one-sixteenth, but after termination it is expressly stated that the grantee will receive a one-half. In *Kokernot,* the fraction granted both before and after reversion was the same, but with a twenty-year term that applied to both.

*Fleming v. Ashcroft,* 142 Tex. 41, 175 S.W.2d 401 (1943), similar to *Kokernot,* states the rule that we should look at the whole instrument and that the construction given should harmonize with the terms of the deed, including its scope, subject-matter, and purpose. In that case, as in *Kokernot,* there was a stated term. The whole instrument is stated at 175 S.W.2d at 404. The deed conveyed a one-half royalty for a term of fifteen years. There was an outstanding lease, and the royalty deed was made subject to that lease. There was never any production from the lease. The deed recited that both before and after the expiration of the lease, the grantee would receive one-half of the royalty. There was no difference in the quantum of the estate before and after reverter. From the four corners of the instrument, the court found no ambiguity and gave effect to the fifteen-year term. *Id.* at 405. When we read the terms of the deed before us and apply the same principle, there is no conflict in any of the terms, and we must give effect to all of them. We cannot ignore the parts of paragraph four stating that upon reversion of the lease, the grantees and Koncabas jointly own lease interests, future rentals, with "each owning a one-half interest in all oil, gas and other minerals in and upon said land...."

There is an additional reason that we cannot ignore the words of paragraph four respecting rights granted upon termination of the outstanding lease. In *Delta Drilling Company v. Simmons,* 161 Tex. 122, 338 S.W.2d 143 (1960), this court gave effect to and harmonized every word of the clause following the termination of lease clause. The provision stated that the grantee, after termination, had "None of the lease interest"; we held that the phrase meant the grantee had no leasing rights. *Garrett v. Dils Company,* 157 Tex. 92, 299 S.W.2d 904 (1957). In the present case, the same provision says that "lease interests ... on said land ... shall be owned jointly by Walter A. Mang ... and" the Koncabas. I know of no other way that we can read those words that will be consistent with the words themselves and *Delta Drilling Company.* Surely, words following the reversion clause of the lease mean something.

By following the analysis and method employed by this court in *Garrett v. Dils Company,* 157 Tex. 92, 299 S.W.2d 904 (1957), we can solve this case. Our method for understanding the meaning of deeds is to ascertain the intention of the parties, when it can be ascertained from a consideration of all parts of the instrument. That intention, we held, prevails over arbitrary rules. *Id.* at 906. In applying that rule, we held, as we should here, that the intent of the grantor was to convey a royalty of ¹⁄₆₄th or one-eighth of the one-eighth royalty and one-eighth of the rentals paid to extend the outstanding lease. Contrary to what the court has done in this case, the *Garrett* court held that a different and a greater interest was conveyed upon the reverter of the outstanding lease. We held that instead of a royalty, after reverter, the intent was to convey minerals; instead of a fraction of royalty of ¹⁄₆₄th, after reverter, the intent was to convey one-eighth of the

minerals; instead of having no leasing rights (the lease was already executed); when the lease terminated, the grantee had the right to lease an undivided one-eighth of the minerals. Different estates were intended in the conveyance before and after the reverter of the outstanding lease.

I would follow these cases and affirm the judgment of the court of appeals.

CAMPBELL and SPEARS, JJ., join in this dissenting opinion.