Eb F. **LUCKEL** et al., Appellants,

v.

Furl **WHITE** et al., Appellees.

No. A14–89–00580–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 24, 1990.

J.M. Slator, III, Houston, for appellants.

Claude C. Roberts, Houston, E.R. Norwood, Liberty, Thomas A. Zabel, Houston, Rex G. Fortenberry, Beaumont, Bradford Pickett, Liberty, Christie Condara, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

OPINION ON REHEARING

J. CURTISS BROWN, Chief Justice.

This is an appeal from final judgment in a severed cause in which appellants' motion for partial summary judgment was overruled and appellees' motion for partial summary judgment was granted after con-

struction by the trial court of a royalty deed which was agreed by the parties, and expressly found by the court below, to be unambiguous.

On April 26, 1990, this court issued an opinion in which it affirmed the judgment of the court below. On May 11, 1990, appellants filed a motion for rehearing. We overrule the motion for rehearing, withdraw our opinion of April 26, 1990, and substitute the following opinion.

Appellants bring three points of error alleging trial court error: (1) in granting motion and entering final judgment for appellees; (2) in declaring the deed at issue grants and conveys a permanent 1/32 non-participating royalty interest in a certain 448 acres of land in Chambers County; and (3) failing to declare that the deed at issue granted and conveyed a 1/4th interest in any and all royalties reserved or payable under any oil, gas and/or other mineral leases on any part of the 448 acres. We affirm.

We are asked to review the construction by the court below of the unambiguous "Mayes–Luckel deed", which reads as follows:

No. 672

STATE OF TEXAS

COUNTY OF HARRIS

KNOW ALL MEN BY THESE PRESENTS: That I, Mary Etta Mayes, a feme sole, of Chambers County, Texas, for a valuable consideration to me in hand paid by L.C. Luckel, Jr. of $3,360.00 receipt whereof is hereby acknowledged, have granted, bargained, sold and conveyed and by these presents do hereby grant, bargain, sell and convey unto the said L.C. Luckel, Jr. an undivided one-thirty-second (1/32nd) royalty interest in and to the following described property, to wit:

[metes and bounds of the 448 acres omitted]

TO HAVE AND TO HOLD the above described 1/32nd royalty interest in and to the above described property, together with all and singular the rights and appurtenances thereto unto the said L.C. Luckel, Jr. his heirs and assigns forever, and I do hereby bind myself, my heirs, executors and administrators, to WARRANT AND FOREVER DEFEND, all and singular the said 1/32nd royalty interest unto the said L.C. Luckel, Jr. his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

It is understood that said premises are now under lease originally executed to one Coe[1] and that the grantee herein shall receive no part of the rentals as provided for under said lease, but shall receive one-fourth of any and all royalties paid under the terms of said lease.

It is expressly understood and agreed that the grantor herein reserved [sic] the right upon expiration of the present term of the lease on said premises to make other and additional leases without the necessity of the joinder of the grantee herein and the grantee shall be bound by the terms of any such leases so made but shall not be entitled to receive any part of the bonuses paid for said lease or any part of the cash rentals that may be paid thereunder, but shall be entitled to one-fourth of any and all royalties reserved under said leases.

It is understood and agreed that Mary Etta Mayes is the owner of one-half of the royalties to be paid under the terms of the present existing lease, the other one-half having been transferred by her to her children and by the execution of this instrument, Mary Etta Mayes conveyed one-half of the one-sixteenth (1/16th) royalty now reserved by her.

WITNESS my hand this 19 day February, A.D. 1935.

1. The "Coe" lease, dated October 1933, covers all of the 448 acres included in the Mayes–Luckel deed and reserves a 1/8th royalty on oil and gas production from that acreage. The lease also provides for royalty payments on all other minerals mined and marketed. The lease had a primary term of 5½ years and as long thereafter as production of minerals continued. One-half of all royalties payable under the lease were assigned by the lease itself directly to the named children of Mary Etta Mayes.

Her
Mary Etta X Mayes
Mark

Mrs. M.A. Hankamer

Witness

STATE OF TEXAS

[notary acknowledgement omitted]

COUNTY OF CHAMBERS

The functional parts of the Mayes–Luckel deed are:

A. The granting clause, conveying an undivided ⅟32nd interest.

B. The habendum clause, confirming the ⅟32nd grant as "forever".

C. The warranty provision as to the ⅟32nd interest granted.

D. The "subject to" clause, identifying the Coe lease then in existence.

E. The "future lease" clause (which reserves to the grantor executive leasing rights and rights to certain payments), granting ¼th of any royalties due under any future leases.

F. The "last clause" which merely reaffirms and clarifies participation under the Coe lease.

The controversy before us arises from the fact that the future lease clause can be read to entitle the grantee to a different royalty interest than that which is conveyed to him by the granting clause.

Appellants ask that we reverse and render upon finding the intention of Mary Etta Mayes was to grant to L.C. Luckel, Jr. a ¼th interest in royalties accruing under the Coe lease until its expiration, and ¼th of the royalty due under any other leases entered into after termination of the Coe lease. The significance of appellants' requested deed construction is that, whereas the Coe lease provided for a ⅛th royalty, some future leases were entered into reserving a ⅙th royalty. Appellants would have us hold that the heirs and assigns of L.C. Luckel have certain rights to oil and gas (and other minerals) recovered from the land equal to ⅟24th of the total production or its value, such fraction being larger, and different, than the ⅟32nd conveyed by the granting clause of the deed.

The rules in Texas for the construction of an unambiguous deed are clear.

■ When possible, the intention of the parties will prevail over arbitrary rules of construction, if that intention can be ascertained from consideration of all parts of the instrument. *Harris v. Windsor*, 156 Tex. 324, 294 S.W.2d 798 (1956).

■ A rule of strict construction against the grantor is not applicable in the absence of ambiguity. *Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818, 824 (Tex.Civ. App.—Houston 1957, writ ref'd n.r.e.), [citing, *inter alia*, *Citizens Nat'l Bank in Abilene v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941), for the additional proposition that an agreement, as a whole, must be harmonized wherever possible].

■ Each deed must be construed from the language used in that particular deed. *Gibson v. Watson*, 315 S.W.2d 48, 56 (Tex. Civ.App.—Texarkana 1958, writ ref'd n.r. e.). The question becomes not what the parties meant to say, but the meaning of what they did say. *Alford v. Krum*, 671 S.W.2d 870, 872 (Tex.1984), citing *Canter v. Lindsey*, 575 S.W.2d 331, 334 (Tex.Civ.App. —El Paso 1978, writ ref'd n.r.e.); and *Davis v. Andrews*, 361 S.W.2d 419, 423 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r. e.).

■ If possible, all parts of the instrument must be given effect by harmonizing and not striking down any part of the deed unless there is irreconcilable conflict with one part of the instrument having the effect of destroying another part. *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166, 167 (1953).

The Texas lodestar case for construing a deed where the granting clause and the future lease clause are in conflict with each other is *Alford v. Krum*, 671 S.W.2d 870 (Tex.1984), which was followed in *Hawkins v. Texas Oil & Gas Corp.*, 724 S.W.2d 878 (Tex.App.—Waco 1987, writ ref'd n.r.e.), and *Stag Sales Co. v. Flores*, 697 S.W.2d 493 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

In *Alford* the Texas Supreme Court construed a mineral deed in which:

1. the granting clause conveyed a ½ of a ⅛th mineral interest.
2. a "subject to" clause conveyed a 1/16th of royalty due under an existing lease.
3. a "future lease" clause provided for an equal (one-half) mineral ownership by the grantor and grantee at the end of the term of the existing lease.

Noting the obvious construction problem where a 1/16th mineral interest is conveyed by the granting clause and a ½ reversionary mineral interest is provided for in a future lease clause, the supreme court determined the granting clause defined the permanent interest which was intended to be conveyed. The "controlling language" and the "key expression of intent" defining the permanent mineral estate conveyed is found in the granting clause. *Id.* 671 S.W.2d at 872. "[W]hen there is an irreconcilable conflict between clauses of a deed, the granting clause prevails over all other provisions." [2] *Id.*, citing *Lott v. Lott*, 370 S.W.2d 463, 465 (Tex.1963); *Waters v. Ellis*, 158 Tex. 342, 312 S.W.2d 231, 234 (1958).

■ The royalty interest conveyed in the Mayes–Luckel deed is not the same as the "mineral interest" found in *Alford*. An interest in minerals in place and an interest in royalty are separate and distinct estates in land. *Pich v. Lankford*, 157 Tex. 335, 302 S.W.2d 645 (1957). However, the two are not strangers to each other. A royalty interest is derived from the grantor's mineral interest and becomes a nonpossessory interest in minerals, recordable and alienable, and taxable to its owner as real property. *See Sheffield v. Hogg*, 124 Tex. 290, 77 S.W.2d 1021 (1934).

■ There are no less than five usual incidents of ownership in the severed fee estate of minerals in place (the so-called "bundle of rights"): (1) ingress and egress [for exploration]; (2) executive rights [to assign the right of entry]; (3) bonus payments; (4) delay rentals; and (5) royalties. With the exception of executive rights [3], each of the incidents of ownership can be conveyed separately and become estates apart from the others. L.G. Mossburg, Jr., *Handbook on Petroleum Land Titles*, § 3.01, at 58, 59 (1976). *Accord, Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986); *Elick v. Champlin Petroleum Co.*, 697 S.W.2d 1, 4 (Tex.App.—Houston [14th Dist.] 1985, n.r.e.).

■ Thus, a royalty interest is a subset of a mineral interest [4] and a royalty deed conveys the royalty interest as a fee. (Albeit a fee which is far less than a fee simple absolute.) Under a royalty deed the grantee obtains possessory rights only when and if the minerals are produced and readied for market. Unlike the holder of

---

**2.** E.g. Where the habendum clause conflicts with the granting clause, the granting clause prevails. *Veltmann v. Damon*, 701 S.W.2d 247 (Tex.1985).

**3.** *See Day & Co., Inc. v. Texland Petroleum, Inc.*, 786 S.W.2d 667 (Tex.1990). "We hold the executive right is an interest in property, an incident and part of the mineral estate like the other attributes such as bonus, royalty and delay rentals. To the extent that it conflicts with this holding, *Pan American Petroleum Corporation v. Cain* is overruled."

The Texas Supreme Court thereby has adopted the minority view of *Pan American Petroleum Corporation v. Cain*, 163 Tex. 323, 355 S.W.2d 506, 511 (1962), which had defined the executive right reserved by the grantor not as a "naked power", but as "a property right, an interest in land, appurtenant to the mineral interest therein conveyed, and for the use and benefit of the

mineral interest retained and owned by [the grantor]."

**4.** "The legal distinction between a 'Mineral Interest' and a 'Royalty Interest' is quite clear. A Mineral Interest possesses all of the incidents of mineral ownership including the right to explore (the 'right of ingress and egress'), the right to lease (the 'executive right'), and the right to share in bonus, delay rentals and royalties. It is a *right* in the oil and gas *'in place'* and a *right to extract* the minerals. The Royalty Interest, on the other hand, is a single incident of mineral ownership; the right to share in oil and gas if, as and when produced, normally as a cost-free interest. It includes no right to ingress and egress for development of the property; no executive (leasing) right; and no right to share in bonus or delay rentals. It is a *right* to oil and gas *after capture*, and an interest in oil and gas *extracted by others*." L.G. Mosburg, Jr., *Handbook on Basic Land Management*, § 2.03(c)(2) (1978).

the mineral fee who owns the minerals in place, the royalty owner may not enter the property to explore, develop or produce the minerals, nor may he allow anyone else to do so. As a further logical practice, the royalty interest owner normally takes no part in leasing to others and does not share in rentals or bonus payments. Consistent with his lack of mineral ownership (until brought to the surface and made marketable), the royalty interest owner enjoys "nonparticipation" in the costs of exploration, development, production, saving, and making ready for sale. *See e.g., Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818, 824 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.). Furthermore, there is no requirement in Texas law that a lease be in effect before a royalty interest can be created. *Barker v. Levy*, 507 S.W.2d 613, 617 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).

■ In the case before us the future lease clause may be in irreconcilable conflict with the granting clause, in which case there is no reason to avoid using the principles established by *Alford v. Krum*, 671 S.W.2d 870, 872 (Tex.1984). A permanent estate, a royalty interest, was intended to be conveyed by the Mayes–Luckel deed and the scope of that interest is clearly expressed in the granting clause. A reconfirmation of the 1/32nd interest appears in both the habendum clause and the warranty provision.

Appellant seeks a fluctuating future estate distinguishable from that which was favored by the dissent in *Alford v. Krum.* Chief Justice Pope, joined by Justices Campbell and Spears, would have given total recognition and dignity to the future lease clause. They would have held the 1/16th mineral interest conveyed by the granting clause in the *Alford* deed also conveyed "the possibility of reverter" of the mineral interests previously granted by the lease referred to in the "subject to" clause, and that after any termination of that lease (and an automatic reversion of mineral rights thereunder), the grant should become finally expanded to a fixed ½ mineral interest. The *Alford* mi-

nority viewed the intent of the parties to be the conscious granting of an expanded mineral estate upon any expiration of the existing lease and believed the words clearly expressed that form of grant. The minority found harmony between the "one-half of one-eighth" stated in the granting clause and an expressed intent in the future lease clause to grant an additional "one-half" of all the grantor would reacquire upon any reversion of mineral rights under the existing lease at its termination. The grantor could be said to be making a present conveyance of one-half of whatever it was he had available to convey in the combined form of his presently-held mineral rights and those rights of a determinable quantum which he had the possibility of regaining in the future.

■ We do not see any intent to make a similar conveyance, fixed or variable, by the language of the Mayes–Luckel deed. Nor can we believe the circumstances of the 1930's even gave rise to the parties entertaining the notion of a future expanded or variable royalty estate. A convincing argument is made by appellees that the future lease clause is not in conflict with the granting clause and the two clauses can be harmonized with ease. For many years the customary landowner's royalty was a 1/8th reservation. This practice was so common that the courts had judicial knowledge that "the usual royalty provided in mineral leases is one-eighth." *Garrett v. Dils Co.*, 157 Tex. 92, 299 S.W.2d 904, 907 (1957); *King v. First Nat'l Bank of Wichita Falls*, 144 Tex. 583, 192 S.W.2d 260, 262 (1946); *Badger v. King*, 331 S.W.2d 955, 958 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r.e.). The dates of the deeds being construed in those three exemplary cases ranged from 1921 to 1939, and the decisions on those cases followed over another twenty years. We find it a reasonable inference that the parties to the Mayes–Luckel deed intended for all future leases to have a reservation of the usual and customary 1/8th landowner's royalty. Such an interpretation allows the future lease clause to be completely harmonized with the granting clause. The granting clause conveys a 1/32nd royalty interest and

the future lease clause unnecessarily reconfirms that ⅟32nd as a ¼th [of the usual and customary ⅛th] royalty interest. The circumstances surrounding the execution of a contract may be used as an aid in its construction, including what the parties knew to be the normal or reasonable and prudent industry standard at the time. *KMI Continental Offshore Production Co. v. ACF Petroleum Co.*, 746 S.W.2d 238, 241 (Tex. App.—Houston [1st Dist.] 1987, writ denied). However, the circumstances are merely an aid and do not constitute a rule of construction. *Id.*

The Mayes–Luckel deed is distinguishable from the *Alford* deed in another respect. The future lease clause in *Alford* attempts to convey an estate by actively referring to "lease interests" and "mineral privileges" which will be "owned jointly", with "each [party] owning a one-half interest" in minerals and future rents. The Mayes–Luckel deed states, rather passively, that the grantee "shall be entitled to one-fourth of any and all royalties reserved" by operation of the grantor's reserved executive rights. The grantor in Mayes–Luckel does not appear to be attempting the conveyance of ownership in an estate under the future lease clause.

On either a basis of conflict or of harmony, we hold as a matter of law that the Mayes–Luckel deed conveyed a ⅟32nd royalty interest and the future lease clause has no effect upon that conveyance.

We also hold as a matter of law the interest conveyed by the Mayes–Luckel deed is singularly a royalty interest, evidenced by, (1) the repeated use of the words "royalty interest"; (2) the lack of any reference whatsoever in the deed to "minerals"; and, more importantly, (3) the lack of any words to indicate the interest is of anything "in and under" the land. *See Barker v. Levy*, 507 S.W.2d 613, 619 (Tex. Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). The purpose for making a holding of this nature is to foreclose any question of the applicability of the "double grant" theory of *Hoffman v. Magnolia Petroleum Co.*, 273 S.W. 828 (Tex.Comm'n App.1925, holding approved) and its proge-

ny, wherein a double grant has been found only if two distinct estates in land are conveyed by the same unambiguous instrument. Because only a single estate, a royalty interest, was conveyed by the Mayes–Luckel deed, the double grant theory is inapposite.

Appellant's points of error are overruled and the judgment of the trial court is affirmed.

Junell, J., not participating.