Gene M. SNOW, Appellant,

v.

JUPITER OIL CO., Appellee.

No. 11–89–242–CV.

Court of Appeals of Texas,
Eastland.

Dec. 20, 1990.

Rehearing Denied Jan. 17, 1991.

David Keltner, Richard K. Casner, G. Dennis Sheehan, Haynes & Boone, Fort Worth, William B. Wright, Jr., Cisco, for appellant.

Joseph W. Russell, Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellee.

## OPINION

ARNOT, Justice.

Seeking judicial construction of a mineral deed, Jupiter Oil Co. brought this declaratory judgment action to establish that it owned one-half of the minerals under a tract of land on which Gene M. Snow, a mineral lessee, was producing oil and gas. Trial was to the court. Snow appeals the trial court's judgment that Jupiter is entitled to one-half of all the proceeds of production less its share of reasonable costs of drilling and production. Urging application of the "repugnant to the grant" rule as established in *Alford v. Krum*, 671 S.W.2d 870 (Tex.1984), Snow asserts in two points of error that, as a matter of law, Jupiter's interest is limited to a one-sixteenth mineral interest. We agree and, accordingly, reverse and render.

In 1918, J.W. Henderson and his wife, Malinda, owned all of the minerals under the north one-half of the northeast one-fourth of Section No. 8, Block No. 4, H & T C Ry. Co. in Eastland County. On September 27, 1918, the Hendersons deeded a mineral interest to Joseph M. Weaver. This deed created the interest now in dispute. A copy of this deed is attached to this opinion. Through mesne conveyances, Jupiter now owns the interest of Weaver.

In 1981 Snow, an oil operator, secured oil, gas, and mineral leases from the heirs of J.W. and Malinda Henderson. These leases covered, among other lands, the north one-half of Section No. 8 and provided for a three-sixteenths lease royalty. Snow also secured an oil and gas lease from May B. Cottingham covering the north one-half of Section No. 8. That lease provided for a one-eighth lease royalty. Snow drilled and completed two producing wells on the tract of land. The purchasers of the oil and gas paid Snow and his investors based upon a division order title opinion showing that 100 percent of the minerals were under lease. This opinion credited the heirs of J.W. and Malinda Henderson with one-half of the minerals and May B. Cottingham with one-half of the minerals.

The lessee, May B. Cottingham, is a successor in interest to J.L. Cottingham, Trustee, who purchased the interest in 1935. However, J.L. Cottingham had previously conveyed the interest to H.H. Porter in 1947, who in turn conveyed the interest to Duquesne Oil Corporation in 1953. Duquesne conveyed the interest to Jupiter.

Jupiter, as an unleased mineral owner, sought reimbursement from Snow for the oil and gas he had produced. (After it had established production, Snow sold one of the two producing wells to a third party.) The parties stipulated as to the amount of proceeds received from the sale of oil and gas, as to the reasonable costs of drilling and completing the wells, and as to the amount of proceeds received from the sale of the one well. Jupiter claims that it is the owner of a one-half mineral interest and, based on the stipulation of costs, is entitled to $572,377.98 after all offsets. Snow claims that Jupiter is the owner of a one-sixteenth mineral interest and, based on the stipulation of costs and after deducting the total royalties paid to the Hendersons and Cottingham, is entitled to $59,922.60.

In its findings of fact, the trial court found that the intent of the grantors and grantee in the deed from the Hendersons to Weaver was to convey one-half of the minerals and entered judgment accordingly. Snow appeals, urging that, as a matter of law, the deed conveyed only one-sixteenth of the minerals.

The Henderson deed can be divided into the following clauses:

1. *The granting clause:* [H]ave granted, sold and conveyed and by these

presents do grant, sell and convey . . . all that certain undivided ¹⁄₁₆ interest in and to all the oil, gas, and other minerals.

2. *The subject to clause:* It is the intention of the parties in the conveyance that the grantee herein is to receive ¹⁄₁₆ part of the oil, gas, or other mineral of whatsoever kind and character produced by the holder of the lease now on said land, that grantors herein now intend to convey ½ of the interest they now have in any such production under said lease.

3. *The future lease clause:* [I]t is the intention of the grantors herein that in the event said lease is forfeited, then in that event the grantee is to have and hold an equal undivided one half of all such minerals.

█ Jupiter asserts that the intent of the parties to the Henderson deed can be obtained by applying the primary rule of construction known as the "four corners" rule. See *Garrett v. Dils Company*, 157 Tex. 92, 299 S.W.2d 904 (1957). The "four corners" rule requires the court to construe the deed according to the intent of the parties as expressed within the four corners of the instrument, giving credit to every phrase and reconciling any conflicting clauses in an attempt to harmonize all language appearing in the deed. Jupiter argues that the intent of the parties is clear: Weaver was to receive one-half of the minerals subject to the existing States Oil Corporation lease then in effect and would, thus, receive one-half of the one-eighth lease royalty or a one-sixteenth net royalty revenue interest. If the States Oil Corporation lease expired, Weaver would have one-half of the minerals and would be entitled to one-half of the royalties provided for in any future lease.

█ Contrary to Jupiter's position of construing the parties' intent, Snow asserts that the deed should be construed by using the "repugnant to the grant" rule. *Alford v. Krum*, supra. Under such rule of construction, the estate described in the granting clause controls as a matter of law if there is an irreconcilable conflict between the mineral deed's "granting clause" and the other clauses. Snow would have this Court construe the deed as conveying a one-sixteenth mineral interest because the "granting clause" clearly conveys a one-sixteenth of the minerals. *Alford v. Krum*, supra.

This very issue of construction was before the Court in *Alford*. In *Alford*, the Court addressed the recurring problem of construing a mineral deed when the instrument contains conflicting language between the "granting clause," the "subject to clause," and the "future lease clause" found in many old forms for conveying minerals. In *Alford*, the Court construed a 1929 mineral deed from Mr. and Mrs. Frank Koncaba to Walter A. Mang. In the Koncaba deed, the "granting clause" recited that the grantors conveyed "one-half of the one-eighth interest in and to all of the oil, gas and other minerals." The "subject to clause" recited that the grantee was to receive "¹⁄₁₆ of all the oil royalty and gas rental or royalty due and to be paid under the terms of [the existing] lease". However, the "future lease clause" provided that, in the event the existing lease lapsed, then the grantor and grantee would each own one-half of the minerals.

█ The Supreme Court in *Alford* recited the well-established rules in interpreting or construing a deed.[1] However, after

---

1. The primary duty of the courts in interpreting a deed is to ascertain the intent of the parties. *Terrell v. Graham*, 576 S.W.2d 610, 612 (Tex. 1979); *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341, 344 (1957). This rule of construction, however, must be modified with the restriction that it is not the intention that the parties may have had but failed to express in the instrument, but it is the intention that is expressed by said instrument. That is, the question is not what the parties meant to say, but the meaning of what they did say. *Canter v. Lindsey*, 575 S.W.2d 331, 334 (Tex.Civ.App.—El Paso

1978, writ ref'd n.r.e.); *Davis v. Andrews*, 361 S.W.2d 419, 423 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). Finally, "[w]e must construe this language as it is written and we have no right to alter it by interpolation or substitution." *Dahlberg v. Holden*, 150 Tex. 179, 238 S.W.2d 699, 701 (1951).

In seeking to ascertain the intention of the parties, the court must attempt to harmonize all parts of a deed, since the parties to an instrument intend every clause to have some effect and in some measure to evidence their agree-

finding the language in the "future lease clause" in conflict with the language of the "granting clause," the court gave effect to the controlling language in the "granting clause" and held that Koncaba conveyed a one-sixteenth of the minerals. In a departure from the rule that the primary duty of the court in construing a deed is ascertaining the intent of the parties, the *Alford* Court adopted the common-law "repugnant to the grant" rule. This bright-line rule provides that, in construing instruments containing an irreconcilable conflict between clauses conveying or describing an estate, the court need only look at the "granting clause." This holding has led to an easy resolution in construing deeds that contain conflicting language; however, its application may lead to results that depart from the apparent true intent of the parties to the instrument. See *Altman v. Blake*, 712 S.W.2d 117 (Tex.1986); *Veltmann v. Damon*, 701 S.W.2d 247 (Tex.1985); *Luckel v. White*, 792 S.W.2d 485 (Tex.App.—Houston [14th Dist.] 1990, writ granted); *Hawkins v. Texas Oil and Gas Corporation*, 724 S.W.2d 878 (Tex.App.—Waco 1987, writ ref'd n.r.e.); *Smith v. Graham*, 705 S.W.2d 705 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.).

The adoption of the "repugnant to the grant" rule has been subject to criticism.[2] This Court has also had difficulty in applying the reasoning for the adoption of this rule to the construction of this deed when the clear intent of the parties is manifestly expressed on the face of the Henderson deed.

If the Henderson deed is reviewed from a "four corners" standard, as established in

*Hancock v. Butler*, 21 Tex. 804 (1858), and followed in *Garrett v. Dils Company*, supra, then the language of the entire deed would be harmonized; no conflict would be found; and the intent of the parties would be consistent with the recitation in the future lease clause resulting in the conveyance of one-half of the minerals. If the deed is reviewed under a "two grant analysis," recognized in *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166 (1953), and suggested by the dissent in *Alford*, again, this Court would find no conflict and, consistent with the parties' expressed intentions, would hold that the Henderson deed conveyed a one-half interest in the minerals. Applying the rule of "construing the deed against the grantor" so as to convey the greatest estate would also result in this Court finding that the Henderson deed conveyed a one-half mineral interest. See *Garrett v. Dils Company*, supra.

■ In *Alford*, the Court found an irreconcilable conflict between the clauses in the Koncaba deed. We suggest that the conflict is not irreconcilable if the Court can harmonize all the parts of the deed. See *Woods v. Sims*, 273 S.W.2d 617 (Tex. 1954). Until such time as the language is harmonized, the conflict is only apparent and not irreconcilable. If the language is in fact irreconcilable, then the deed must, by definition, be ambiguous. If ambiguous, then the court should admit extraneous evidence to determine the parties' intent. *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341 (1957). Nevertheless, the *Alford* Court found that the Koncaba deed was not ambiguous despite its holding

---

ment. *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 620 (1954). On the other hand, we realize that irreconcilable conflicts do exist; therefore, when it is impossible to harmonize internally inconsistent expressions of intent, the court must give effect to the "controlling language" of the deed and not allow ambiguities to "destroy the key expression of intent" included within the deed's terms. *Texas Pacific Coal & Oil Co. v. Masterson*, 160 Tex. 548, 334 S.W.2d 436, 439 (1960).

2. Recently, the Oil and Gas Section of the State Bar published a paper at the Eighth Annual Advanced Oil, Gas, and Mineral Law Course (1990) by Scott and Bledsoe entitled *The Ten*

*Most Regrettable Oil and Gas Decisions Ever Issued By The Texas Supreme Court*. A survey was taken among oil and gas practitioners to determine which oil and gas cases they disagreed with the most. *Alford* made the list. Although we do not decide cases on popularity polls or upon "Mr. Blackwell's best dressed list," the article expresses the concerns of the practitioners with the application of the "repugnant to the grant" rule. Although *Alford* attempted to clear up confusion in construing three grant deeds, the "repugnant to the grant" rule has increased the uncertainty in ascertaining mineral ownership.

that an irreconcilable conflict between the clauses existed.

■ Neither Jupiter nor Snow asserts that the Henderson deed is ambiguous, nor do they urge that the Court should consider extraneous evidence concerning the intent of the parties. On February 26, 1919, Weaver conveyed the mineral interest in dispute to West Texas Oil Corporation, describing the mineral interest in the same language and clauses as used in the deed to Weaver. On April 1, 1925, West Texas Oil Corporation conveyed by mineral deed its interest to O.D. Caldwell, describing the interest being conveyed as: "all that certain ... undivided $\frac{1}{16}$ interest in and to all the oil, gas, and other minerals of whatsoever kind and character in and under the following described lot, tract or parcel of land ... the interest herein conveyed being the same interest conveyed by Joseph M. Weaver to West Texas Oil Corporation by deed dated February 26, 1919." This interest was traded four more times in the next 30 years using the identical language as in the deed to Caldwell. Further, the record contains a copy of the division order title opinion secured by Snow on the above property. This opinion credits May B. Cottingham (a successor in interest to J.L. Cottingham, Trustee) as owning one-half of the minerals and the heirs of J.W. Henderson as owning one-half of the minerals. Without finding the deed to be ambiguous, this extraneous evidence is not admissible.

■ Although the *Alford* decision recites its consideration of the "four corners" rule, the application of the "repugnant to the grant" rule is inconsistent with the application of the "four corners" rule. And, *Alford* rejects the use of the "two grant" rule. Further, by finding an irreconcilable conflict, but not an ambiguity, in Henderson-type mineral deeds, *Alford* does not allow the use of extrinsic evidence.

In his well-analyzed article, *Deed Construction and the "Repugnant to the Grant" Doctrine*, Tevis Herd raises other valid legal and practical criticisms to the *Alford* decision than the ones discussed above. Herd, *Deed Construction and the "Repugnant to the Grant" Doctrine*, 21 TEXAS TECH L.REV. 635 (1990). In that article, the author reviews the history of the "repugnant to the grant" rule and concludes that the courts should exercise great restraint in adopting the "repugnant to the grant" doctrine as a solution. However, the Supreme Court has already adopted the "repugnant to the grant" rule in *Alford*, and we must follow that rule even if the results are contrary to the parties' apparent intent. We would respectfully suggest that the Supreme Court reconsider the application of the "repugnant to the grant" rule.

In an *Alford* analysis, the Henderson deed in the instant case contains an irreconcilable conflict between the clauses. The granting clause clearly conveys a one-sixteenth mineral interest, while the future interest clause describes a one-half mineral interest. Therefore, as a matter of law, the Henderson deed conveys a one-sixteenth interest in and to the minerals, regardless of the parties' manifest intention expressed on the face of the document.

The judgment of the trial court is reversed; and judgment is rendered that Jupiter owns one-sixteenth interest in and to the minerals in, on, or under the north one-half of the northeast one-fourth of Section No. 8, Block No. 4, H & T C Ry. Co. Survey in Eastland County and that Jupiter, as an unleased mineral owner, recover from Snow one-sixteenth of the proceeds of the sale of oil and gas from the property in dispute less its share of the reasonable cost of drilling and completing the wells for a total of $71,547.24 plus prejudgment interest of $17,812.50 plus post-judgment interest at the rate of ten percent per annum from May 2, 1989, the date of the trial court's judgment.

"APPENDIX".
The Dorsey Company, Stationers, Dallas, Texas—66418

#1130.
THE STATE OF TEXAS }
County of Eastland. } **Know All Men by These Presents:**

That We. J. W. Henderson and wife Malinda Henderson of the county of Eastland State of Texas for and in consideration of the sum of Four Thousand Dollars to us in hand paid by Joseph M. Weaver as follows: Four Thousand Dollars cash the receipt of which is hereby acknowledged have granted sold and conveyed and by these presents do grant sell and convey unto the said Joseph M. Weaver of the County of Eastland State of Texas all that certain undivided 1/16 interest in and to all the oil, gas, and other minerals of whatsoever kind and character in and under the following described lot, tract or parcel of land lying and being situated in Eastland County, Texas, being the N. 1/2 of the N. E. 1/4 of Section No. 8, Block No. 4, H & T C Ry. Co. survey in Eastland County, Texas, containing 80 acres more or less, together with the right to enter thereon, open mines, drill wells lay pipe lines, and erect all structures, and appliances necessary in searching for, procuring caring for, storing and removing any natural gas, oil or other mineral of whatsoever kind and character that may be found, thereunder, and to erect telephone and telegraph lines for use in the business thereon, together with the right to remove any and all such fixtures placed thereon.

It is expressly understood and agreed to by all parties hereto that the surface of the above described land is conveyed only for all purposes and uses above set forth, And that this grant and conveyance is made with the understanding that the States Oil Corporation has a mineral lease on said land made to Joseph M. Weaver and assigned to States Oil Corporation. But said lease covers other land and grantee herein is entitled to receive his proportionate part of all rents, lease money and revenues hereinafter accruing by reason of the present or any subsequent lease on above described land, It is the intention of the parties in the conveyance that the grantee herein is to receive 1/16 part of the oil, gas, or other mineral of whatsoever kind and character produced by the holder of the lease now on said land, that grantors herein now intend to convey 1/2 of the interest they now have in any such production under said lease.

In the event the lease now on said land is forfeited or terminated withou producing mineral of any kind, then the grantee herein or his assigns are to have and hold under this conveyance an undivided 1/2 of all the oil, gas or other mineral of whatsoever kind character in and under the land herein described, and it is the intention of the grantors herein that in the event said lease is forfeited, then in that event the grantee is to have and hold an equal undivided one half of all such minerals.

Revenue stamps $4.00 cancelled.

TO HAVE AND TO HOLD, The above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Joseph M. Weaver and his
heirs and assigns, forever, and We do hereby bind ourselves and our heirs, executors and administrators to Warrant and Forever Defend, all and singular, the said premises unto the said Joseph M. Weaver and his
heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

WITNESS our hand s at Eastland, Texas this 27th day of September A.D. 18.

Witness at Request of Grantor:

J. W. Henderson.

Malinda Henderson.

THE STATE OF TEXAS, }
County of Eastland } BEFORE ME, R. L. Rust Notary Public
In and for Eastland County, Texas, on this day personally appeared J. W. Henderson
known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office, this 27 day of Sept. A.D. 19 18.
(Seal) R. L. Rust Notary Public Eastland County, Texas.

THE STATE OF TEXAS, }
County of } BEFORE ME,
In and for County, Texas, on this day personally appeared
wife of known to me to be the person whose name is subscribed to the foregoing instrument, and having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.
Given under my hand and seal of office, this day of A.D. 19

THE STATE OF TEXAS, }
County of Eastland } BEFORE ME, R. L. Rust Notary Public in and for
Eastland County, Texas, on this day personally appeared J. W. Henderson
and Malinda Henderson his wife, both known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed And the said J. W. Henderson
wife of the said
Malinda Henderson having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said Malinda Henderson acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.
Given under my hand and seal of office, this 27 day of Sept A.D. 19 18.
(Seal) R. L. Rust Notary Public Eastland County, Texas.

Filed for record the 28 day of Sept A.D. 19 18 at 4 o'clock minutes P. M., and recorded the 11 day of Oct A.D. 1918, at 2 o'clock minutes P. M.
By Deputy County Clerk

# CLERK'S CERTIFICATE

THE STATE OF TEXAS X

COUNTY OF EASTLAND X

I, JOANN JOHNSON, Clerk of the County Court of Eastland County, Texas, do hereby certify that the above and foregoing is a true and correct copy of:

INSTRUMENT: RECORDED IN:
 VOL: PAGE:

Warranty Deed 115 497

FROM:

J. W. Henderson, et ux

TO:

Joseph M. Weaver

As same appears on file and/or will appear of record in the_____

_____Deed_____Records of Eastland County, Texas.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, in the City of Eastland, Eastland County, Texas, this_____20th_____day of__December_____

A.D. 1990.

JOANN JOHNSON, COUNTY CLERK

EASTLAND COUNTY, TEXAS

By_____
 Gena Calhoun Deputy

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF
THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID
AND UNENFORCEABLE UNDER FEDERAL LAW.

